*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0110P (6th Cir.)
File Name: 02a0110p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ANNABELLE LEGG,
       *Plaintiff-Appellant,*

    *v.*

DR. ASH CHOPRA,
         *Defendant,*

UNIVERSITY UROLOGY, P.C.,
       *Defendant-Appellee.*

No. 00-6075

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 99-00439—James H. Jarvis, District Judge.

Argued: January 29, 2002

Decided and Filed: April 3, 2002

Before: SUHRHEINRICH, SILER, and BATCHELDER,
Circuit Judges.

---

**COUNSEL**

**ARGUED:** Timothy W. McAfee, MCAFEE LAW FIRM, Norton, Virginia, for Appellant.    Jeffrey A. Woods, NORTON & LUHN, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Timothy W. McAfee, MCAFEE LAW FIRM, Norton, Virginia, for Appellant.    Jeffrey A. Woods, R. Franklin Norton, NORTON & LUHN, Knoxville, Tennessee, for Appellee.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge. Plaintiff Annabelle Legg appeals from the orders of the district court granting summary judgment to Defendant University Urology, P.C., and denying Plaintiff's motion to vacate judgment in favor of Defendant in this medical malpractice diversity action. We hold that Plaintiff's medical expert testimony was properly excluded as failing to meet the requirements of Tenn. Code Ann. § 29-26-115(b), which dictates who may be accepted as a medical expert in a medical malpractice action under Tennessee law. We reject Plaintiff's argument that § 29-26-115(b) is trumped by Federal Rule of Evidence 702, because the Tennessee statute is a rule of witness competency, and as such, applies in federal civil proceedings pursuant to Federal Rule of Evidence 601. Furthermore, we see no conflict in giving effect to both Rule 601 and Rule 702.

**I.**

On August 25, 1998, Annabelle Legg underwent cystocele repair surgery at the University of Tennessee Medical Center to remove a cyst from the interior wall of Legg's vagina and to create a sling to support her bladder. Dr. Chopra, an employee of University Urology, P.C., performed the surgery. Plaintiff alleged that, during the surgery, she suffered major

blood loss resulting in four blood transfusions. Dr. Chopra placed packing into the area, but Plaintiff alleged that she continued to suffer blood loss. Plaintiff was then hospitalized for four days after the surgery took place.

Dr. Chopra removed the packing on August 26, 1998, but the blood loss continued. Dr. Chopra replaced the packing again on August 27, 1998. Plaintiff reported weakness and persistent bleeding to Dr. Chopra. On August 28, 1998, Dr. Chopra released Plaintiff from the hospital. Plaintiff continued to have severe problems with bleeding, however. Soon after Plaintiff's release, Dr. Chopra moved from Tennessee to California.

On August 31, 1998, another employee of University Urology, Dr. Paul Hatcher, removed the packing. On September 1, 1998, Plaintiff traveled to Lonesome Pine Hospital in Big Stone Gap, Virginia, where she was seen by Dr. Roberts in the emergency room. Dr. Roberts contacted Dr. Hatcher, who asked Roberts to repack the surgery site and to instruct the plaintiff to return to Dr. Hatcher's office the next day.

On September 2, 1998, Dr. Hatcher replaced Plaintiff's packing. Plaintiff had bled through the packing by 6:00 a.m. that morning and had a high fever and chills. That packing was removed. Dr. Hatcher instructed Plaintiff to return on September 8, 1998, to see Dr. Frederick Klein who was also an employee of University Urology.

Plaintiff returned on September 8, 1998, and was examined by Dr. Klein. He recommended that surgery be conducted immediately to ascertain the cause of the bleeding. After performing the surgery, Dr. Klein determined that the surgery site had either not been sutured or that the sutures had come loose.

On August 18, 1999, Plaintiff brought this medical malpractice action against Dr. Chopra[1] and University Urology, P.C. The district court granted summary judgment to Defendants, holding that Plaintiff failed to create an issue of fact that Defendants fell below the standard of care. In so ruling, the district court refused to consider the testimony of Plaintiff's medical expert, Dr. Bernard Mittemeyer, who is licensed to practice in Texas, and therefore failed to satisfy the requirements of § 29-26-115(b), which requires that the expert be licensed to practice "in the state or a contiguous border state." The court further held that Mittemeyer's affidavit was otherwise insufficient to create a genuine issue of fact under Fed. R. Civ. P. 56(e). Finally, the district court denied Plaintiff's motion to waive the requirements of § 29-26-115(b). Thereafter, Plaintiff moved to vacate judgment to give her additional time to obtain a qualifying expert. The district court denied the motion because Plaintiff failed to meet the standards set out in Rule 60 to justify relief. This appeal follows.

## II.

We review the district court's grant of summary judgment *de novo. Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## A.

First, Plaintiff argues that the district court mistakenly applied Fed. R. Evid. 601 and state law, and not Fed. R. Evid. 702, in deciding the evidentiary question of whether her expert was qualified to render an opinion. Plaintiff further contends that Tenn. Code Ann. § 29-26-115(b) conflicts with

---

[1]Chopra was voluntarily dismissed on March 9, 2000.

motions for relief under both Rule 59 and Rule 60 for an abuse of discretion. *Barnes*, 201 F.3d at 820 (Rule 59(e)); *Abrahamsen v. Trans-State Exp., Inc.*, 92 F.3d 425, 428 (6th Cir. 1996) (Rule 60).

Legg contended before the district court that she should have been given more time to locate an expert witness because "[a]t the time the Defendant filed its Motion for Summary Judgment, the discovery depositions of the agents of the Defendant had just been completed. Counsel for the Plaintiff had not even received a copy of the signed depositions of Dr. Chopra and Dr. Hatcher." Legg further argues that until these depositions were available, it would be difficult to enlist an expert witness.

This argument is without merit. Legg should have been searching for an expert at the outset in order to properly meet her burden of proof under Tenn. Code Ann. § 29-26-115. Further, Legg's argument is really a motion to reconsider, not a motion under Fed. R. Civ. P. 56 or 60(b). Thus, the district court did not abuse its discretion in denying the motion.

## E.

Lastly, Legg alleges that the restrictive language of Tenn. Code Ann. § 29-26-115(b) is unconstitutional. Specifically, she claims that the state statute violates her constitutional right to due process and equal protection because it treats victims of medical malpractice in different ways. This argument was not made below and is therefore forfeited on appeal. *See Foster v. Barilow*, 6 F.3d 405, 407-08 (6th Cir. 1993). Regardless, it is without merit. *See Sutphin v. Platt*, 720 S.W.2d 455, 458 (Tenn. 1986) (holding that the geographic limitation of § 29-26-115(b) is constitutional under a rational basis test); *Ralph by Ralph v. Nagy*, 749 F. Supp. at 175-76 (constitutional under due process and equal protection clauses).

## III.

The judgment of the district court is **AFFIRMED.**

on *Rose v. H.C.A. Health Serv. of Tenn., Inc.*, 947 S.W.2d 144 (Tenn. Ct. App. 1996), which held that counsel's effort to retain an expert in Tennessee or a contiguous state, despite the fact that the plaintiff had contacted doctors in two Tennessee cities, used a professional witness locator, and also tried to enlist other doctors to be listed as experts. *See id.* at 147. The Tennessee Court of Appeals supported its decision by listing from the defendant's affidavit the number of physicians in Tennessee and contiguous states. *See id.* at 148 (listing, in the thousands, the number of doctors in Tennessee and contiguous states).

Legg complains that the district court abused its discretion because she made the following efforts, as articulated in her attorney's affidavit. First, on August 20, 1999, counsel had his research analyst, Ken Berry, search for an expert. Berry found only a single expert, whom counsel contacted. The expert was unwilling to testify because he was acquainted with Dr. Chopra. Next, in November 1999, counsel contacted a referral service and was given the name of a doctor in Maryland. Counsel wrote and called numerous times, but received no response. In February and March 2000, counsel contacted a urologic practice in Kingsport, Tennessee and a urologic practice in Nashville, Tennessee. Counsel received no response from either practice. After this point, counsel contacted Dr. Mittemeyer.

It cannot be said that the district court abused its discretion. *See Ayers by Ayers v. Rutherford Hosp., Inc.*, 689 S.W.2d 155, 162 (Tenn. Ct. App. 1984). Counsel's affidavit reveals limited contacts in the nine-month period subsequent to the filing of the complaint. In the absence of information on the number of urologists available in Tennessee and the contiguous states, we cannot say that the district court erred in denying the waiver.

### D.

Plaintiff argues that the district court improperly denied Plaintiff's motion to vacate the judgment in order to give her additional time to obtain an expert. We review denials of

*Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), and progeny.

In federal diversity actions, state law governs substantive issues and federal law governs procedural issues. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Rules of evidence are deemed rules of procedure, 19 Charles Alan Wright & Arthur R. Miller, § 4512 (2d ed. 1996); *Salas by Salas v. Wang*, 846 F.2d 897, 905-06 (3d Cir. 1988), and therefore, the Federal Rules of Evidence, rather than state evidentiary laws, are held to apply in federal diversity proceedings. *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000); *Grossheim v. Freightliner Corp.*, 974 F.2d 745, 754 (6th Cir. 1992); *Laney v. Celotex Corp.*, 901 F.2d 1319, 1320 (6th Cir. 1990)  Indeed, the federal rules themselves provide that they "apply generally to civil actions and proceedings." Fed. R. Evid. 1101(b). Further, this Court has categorically stated that "[t]he admissibility of expert testimony is a matter of federal, rather than state, procedure." *Brooks v. Am. Broad. Cos.*, 999 F.2d 167, 173 (6th Cir. 1993).

However, some state evidentiary rules have substantive aspects, thereby defying the substance-procedure distinction and creating a potential *Erie* conflict. *See, e.g., CMI-Trading, Inc. v. Quantum Air, Inc.*, 98 F.3d 887, 891 (6th Cir. 1996) (holding that although the parol evidence rule relates to trial procedure, it is substantive in nature); *see also Ungerleider v. Gordon*, 214 F.3d 1279, 1282 (11th Cir. 2000) (same). State witness competency rules are often intimately intertwined with a state substantive rule. This is especially true with medical malpractice statutes, because expert testimony is usually required to establish the standard of care. *See Peck v. Tegtmeyer,* 834 F. Supp. 903, 909 (W.D. Va. 1992) ("In other words, under the statutory scheme, the standard of care is that which is testified to by an expert qualified under the statute."), *aff'd,* 4 F.3d 985 (4th Cir. 1993) (unpublished per curiam). The Federal Rules of Evidence resolve this potential conflict between state and federal law on the issue of witness competency. *See generally* Joseph M. McLaughlin,

3 WEINSTEIN'S EVIDENCE ¶ 601[05] (2001).**[2]**  Rule 601 incorporates the *Erie* mandate by expressly providing that "State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law." Fed. R. Evid. 601; *cf.* Fed. R. Evid. 302 (state law applies in questions of presumption); Fed. R. Evid. 501 (questions of privilege "shall be determined in accordance with State law").

The Tennessee statute is precisely the type of rule Fed. R. Evid. 601 addresses.  It provides in part:

> **29-26-115. Claimant's burden in malpractice action-- Expert testimony--Presumption of negligence--Jury instructions.--** (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided in subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

---

**[2]**Prior to the enactment of Rule 601, federal courts routinely applied state Dead Man's Acts in civil cases, since state law governed questions of competency.  Doubting the effectiveness of the Dead Man's Acts, the Advisory Committee originally drafted Rule 601 to avoid requiring federal courts to follow state law on the issue of competency of witnesses. The original version of Rule 601 contained only its present first sentence. Congress rejected this version and added the second sentence to Rule 601, to reflect the *Erie* doctrine. *See* WEINSTEIN'S FEDERAL EVIDENCE, ¶¶ 601.02[2][b], 601.05[1][a]&[b]; *see also Peck v. Tegtmeyer,* 834 F. Supp. 903, 910 (W.D. Va. 1992) (observing that Rule 601 "has been primarily concerned with the proper application of various states' dead man statutes," and that, given this historical context, "it is doubtful that the rule was intended to supplant Rule 702"), *aff'd* 4 F.3d 985 (4th Cir. 1993) (unpublished).

that the incision had been originally sutured and dehisced, necessitating that it be *resutured*.  Mittemeyer's affidavits fail to identify any material fact to cast doubt on these records. They are speculative; at most, they demonstrate the possibility of malpractice, not the probability of malpractice.  They therefore fail to establish a genuine issue as to causation. *See Boburka v. Adcock*, 979 F.2d 424, 427-29 (6th Cir. 1992) (discussing sufficiency of evidence of causation under Tenn. Code Ann. § 29-26-115(a), holding that the Tennessee malpractice statute requires proof that it is more likely than not that the defendant's negligence caused the injury; "mere possibility" is not enough).

Mr. Legg's deposition testimony cannot resurrect Plaintiff's claim because it is inconclusive.

Regarding Plaintiff's attempt to establish malpractice in her post-operative care, it likewise falls short because Mittemeyer failed to indicate what should have been done differently to prevent the injuries that occurred.

In short, even if Dr. Mittemeyer had been determined competent to testify, his affidavits failed to meet the requirements of Tenn. Code Ann. § 29-26-115 and Rule 56 for the purpose of establishing a medical malpractice claim.

### C.

Next, Legg asserts that the district court improperly denied her motion to waive the requirements of Tenn. Code Ann. § 29-26-115(b).  The last sentence of § 29-26-115(b) provides that the requirement may be waived if the court "determines that the appropriate witnesses otherwise would not be available."  Tenn. Code Ann. § 29-26-115(b).

The district court found that Plaintiff failed to make a showing that the appropriate witness otherwise would not be available, and that counsel's efforts to find an expert within the geographic realm of § 29-26-115(b) were cursory at best. The court therefore refused to exercise its statutorily-created discretion regarding medical experts.  The district court relied

Dr. Klein told him that Chopra did not put in any stitches. Mr. Legg stated in relevant part that:

> He came out, said the surgery went fine. Said when he went in, there was an incision about two inches long in her vagina wall. There were no stitches, that they had left the stitches out. He picks up a little pamphlet and draws a picture of the vagina and, you know, shows me, draws it out. He said they went in there and just stitched her up and she would be fine. Said – Then he kicked back and said, "Well, either they forgot to put in stitches or the stitches fell out, but mine will not fall out." And that was pretty much it. He explained that.

Plaintiff argues that Mr. Legg's testimony creates a genuine issue of fact, and that Mittemeyer's affidavit merely acknowledge the existence of this dispute.

We disagree. To begin, as the district court noted, the Mittemeyer affidavits are phrased in conditional terms. Paragraph 8 of the original affidavit and page 7 of the supplemental affidavit state "*If* Dr. Chopra failed to suture the interior vagina wall, that is a deviation of the standard of care. However *if* Dr. Chopra did suture the anterior vaginal wall during his surgery then Dr. Chopra was not negligent." The affidavits fail to reference any records from the University of Tennessee Medical Center or University Urology, P.C., indicating that there was such a failure to suture the anterior vaginal wall. In fact, evidence presented by Defendants as part of its motion for summary judgment establishes just the opposite. The Operative Reports dated August 26, 1998, and September 9, 1998, maintained by the University of Tennessee Medical Center state that Dr. Chopra sutured Mrs. Legg's anterior wall. The Operative Report dated August 26, 1998, states "[w]e closed the anterior vaginal wall with 2-0 Victryl running suture." (J.A. 119.) The Operative Report dated September 9, 1998, prepared by Dr. Klein, stated "On inspection, the entire vaginal flap dehisced . . . [i]t was resutured with running and interrupted 3-0 Vicryl." (J.A. 120.) Dr. Klein's report clearly communicates his impression

(3) As a proximate result of the defendant's negligent or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make person's expert testimony relevant to the specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

Tenn. Code Ann. § 29-26-115 (Supp. 2001). The structure of the statute reflects the intimate relationship between the standard of care and the qualification requirements of the medical expert who will establish that standard. Thus, there can be little doubt but that § 29-26-115(b), via Rule 601, applies in this federal diversity action. Finally, we note that two district courts have already reached this conclusion. *See Ralph by Ralph v. Nagy,* 749 F. Supp. 169, 172-73 (M.D. Tenn. 1990); *Crumely v. Memorial Hosp. Inc.*, 509 F. Supp. 531, 532 n.2 (E.D. Tenn. 1978), *aff'd*, 647 F.2d 164 (6th Cir. 1981) (unpublished); *cf. Barton v. Am. Red Cross*, 829 F. Supp. 1290, 1299 (M.D. Ala. 1993) (holding that, under Rule 601, competency requirements under Alabama Medical Liability Act applied in federal court rather than Rule 702), *aff'd*, 43 F.3d 678 (11th Cir. 1994).[3] In sum, Federal Rule of

---

[3] We have previously declined to decide whether Rule 601 or 702 controls the competency of a medical expert. *See Ralph by Ralph v. Nagy*, 950 F.2d 326, 329 (6th Cir. 1991) ("These issues are moot because the jury expressly found that the defendant did not breach his duty to the

Evidence 601 dictates that the Tennessee's witness competency rule governs the admissibility of medical expert testimony in this case.

This does not completely end our analysis, however. Implicit in Plaintiff's argument is the assumption that Rules 601 and 702 are mutually exclusive. We do not agree with this assumption. As the foregoing discussion explains, Rule 601 deals with the witness's *competency*, which makes it essentially substantive (because it is "intimately intertwined" with the substantive law), whereas Rule 702 (as interpreted by *Daubert*) is truly a measure of *qualification,* as it is directed at the science and methodology behind the witness's testimony, and is therefore a procedural issue. Thus, we see no reason why the two rules cannot work in tandem, *because they are not in direct conflict. See* Robin Kundis Craig, *When Daubert Gets Erie: Medical Certainty and Medical Expert Testimony in Federal Court*, 77 Denv. U. L. Rev. 69, 114 (1999) (positing that state medical certainty standards and Rule 702 are not in direct conflict, because state medical certainty standards in general are essentially substantive, that is, "impose certainty standards to ensure that the conclusion actually meets the confidence threshold," and Rule 702 "seeks to ensure that expert testimony is based on credible and reliable science--that the expert can reach the conclusion stated through proper scientific methodology"). Thus, if a witness is deemed competent to testify to the substantive issue in the case, such as the standard of care, his or her testimony should then be screened by Rule 702 to determine if it is otherwise admissible expert testimony. We therefore find no conflict between Tenn. Code Ann. § 29-26-115(b) and Fed. R.

---

plaintiff under the appropriate standard of care."); *Hanson v. Parkside Surgery Ctr.*, 872 F.2d 745, 750 n.5 (6th Cir. 1989) ("Because neither party has raised the issue of Dr. O'Day's competency as an expert, we again decline to consider" the relationship between Federal Rules of Evidence 601 and 702.); *Ward v. United States*, 838 F.2d 182, 187-88 (6th Cir. 1988) (broaching but declining to decide which rule, Fed. R. Evid. 601 or Fed. R. Evid. 702, governed competency of witness because the parties failed to show that the evidentiary ruling affected a substantial right as required by Fed. R. Evid. 103(a)(1)).

Evid. 702, since the first is directed at establishing the substantive issue in the case, and the second is a gatekeeping measure designed to ensure "fairness in administration"of the case. *See* Fed. R. Evid. 102.[4]

In conclusion, we hold that the district court did not err in applying Fed. R. Evid. 601 and Tenn. Code Ann. § 29-26-115(b) in its analysis.

**B.**

Plaintiff also challenges the district court's holding that Mittemeyer's affidavits were insufficient to create a genuine issue of disputed fact. Mittemeyer's affidavits allege two separate acts or omissions that constituted medical malpractice: (1) Dr. Chopra failed to suture the surgical incision; and/or (2) improper post-surgical care by unidentified employees of University Urology.

The district court rejected Mittemeyer's affidavit as failing to set forth with specificity facts sufficient to create a genuine issue of fact for trial as required by Fed. R. Civ. P. 56(e). The lower court held that Mittemeyer failed to specifically inform the court as to how the deviation from the standard of care occurred and who specifically committed the deviation. The district court also rejected Dr. Mittemeyer's opinion because it was merely conditional, that is, he alleged that Dr. Chopra had deviated from the standard of care "if" he had failed to suture the anterior vaginal wall.

Plaintiff contends that the deposition testimony of Mr. Legg resolves any objection that Mittemeyer's opinion is merely conditional on the issue of whether Dr. Chopra failed to suture the anterior vagina wall because Mr. Legg testified that

---

[4]We express no opinion as to any potential conflict between application of Fed. R. Evid. 702 and other state medical certainty standards pertaining to burden of proof and admissibility, because such is not at issue in this case.