FILED
United States Court of Appeals
Tenth Circuit

July 26, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EDWARD POCHE; CYNTHIA POCHE,

     Plaintiffs–Appellees,

v.

RAOUL JOUBRAN, MD;
GASTROENTEROLOGY ASSOCIATES,
P.C.,

     Defendants–Appellants,

MARY E. MACGUIRE, MD - Doctor of
Medicine; JAMES ANDERSON; WYOMING
SURGICAL ASSOCIATES, PC,

     Defendants,

----------------------------------------

UNITED STATES OF AMERICA,

     Intervenor–Appellee.

No. 09-8055
(D.C. No. 2:07-CV-00213-CAB)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

---

     [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

Dr. Raoul Joubran and Gastroenterology Associates, P.C., (collectively, "Joubran") appeal a jury verdict in favor plaintiffs Edward and Cynthia Poche. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

In February 2005, Army Sergeant Edward Poche underwent surgery to remove his gallbladder. In July of the same year, Poche sought treatment from Joubran for abdominal pain. Joubran performed an esophagogastroduodenoscopy ("EGD")[1] to identify the source of the pain. Based on the EGD findings, Joubran subsequently performed an endoscopic retrograde cholangiopancreatography ("ERCP")[2] and a sphincterotomy.[3]

Poche was discharged from the hospital the evening of the ERCP, but returned the next morning with severe abdominal pain. Joubran examined Poche two days after the ERCP surgery, and contacted a surgeon who examined Poche the following day. The surgeon diagnosed Poche with a perforation of the duodenum that required emergency surgery. Poche's condition continued to deteriorate, and a third physician performed five

---

[1] In an EGD, a physician inserts a scope down the esophagus and through the stomach into the duodenum to examine the upper digestive tract.

[2] An ERCP involves inserting a scope into the duodenum via the esophagus. A small catheter is then inserted into the common bile duct.

[3] A sphincterotomy is the cutting of a sphincter muscle.

additional surgeries to try to stabilize his condition. After several weeks, Poche was transferred to Bethesda Naval Hospital, where he endured more than two dozen additional surgeries and recovered for approximately four and a half months. The United States covered the cost of Poche's medical care and paid Poche's salary during his recovery.

Invoking diversity jurisdiction, Poche and his wife Cynthia filed suit in federal district court against Joubran, two other physicians, and their medical corporations, asserting the defendants negligently breached their duties of care in their treatment of Poche. The United States successfully moved to intervene to assert its right to recovery under the Medical Care Recovery Act, 42 U.S.C. § 2651 et seq.

The case was tried before a jury in March and April 2009. During voir dire, each side was provided with three peremptory challenges. Joubran did not object to the number of peremptory challenges or contend that he had been deprived of his right to an impartial jury. Counsel for Joubran stated he was satisfied with the jury.

At trial, plaintiffs called a board-certified gastroenterologist to testify regarding the standard of care. They also elicited expert testimony from general surgeon Dr. David Livingston after the district court denied Joubran's motion in limine seeking to preclude such testimony, and cross-examined two other medical experts retained by Joubran's co-defendants, Drs. Demarest and Mackersie. The jury ultimately returned a verdict in favor of the Poches against Joubran and one co-defendant. Joubran timely appealed.

**II**

Joubran requests a new trial, arguing that the district court erred in permitting Livingston to testify as an expert and by allowing the Poches to cross-examine medical experts retained by Joubran's co-defendants regarding the applicable standards of care. "We review de novo the question whether the district court applied the proper legal standard in admitting an expert's testimony; we then review for abuse of discretion its actual application of the standard." Neiberger v. FedEx Ground Package Sys., 566 F.3d 1184, 1189 (10th Cir. 2009) (citation omitted). We will not disturb the trial court's decision to admit evidence unless we have "a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." McEwen v. City of Norman, 926 F.2d 1539, 1553-54 (10th Cir. 1991) (quotations omitted). Moreover, "if there is error in the admission or exclusion of evidence, we will set aside a jury verdict only if the error prejudicially affects a substantial right of a party." Hinds v. General Motors Corp., 988 F.2d 1039, 1049 (10th Cir. 1993) (citations omitted).

In the Tenth Circuit, a district court assesses the admissibility of expert testimony using a two-step analysis: First, the court must determine if the expert is qualified by "knowledge, skill, experience, training, or education," Fed. R. Evid. 702, to render an expert opinion. See Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 969 (10th Cir. 2001). If the expert is so qualified, the court must then assess "whether her opinions were 'reliable' under Daubert [v. Merrell Dow Pharmaceuticals, Inc.], 509 U.S. 579 [(1993)], and Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999)." Ralston, 275

F.3d at 969 (alternative citations omitted).

# A

Joubran asserts that we should review the district court's decision to admit the challenged expert testimony de novo because the court failed to properly assess reliability under Daubert. This argument mistakes our standard of review. We review de novo only "whether the district court applied the proper standard and actually performed its gatekeeper role in the first instance." Dodge v. Cotter Corp., 328 F.3d 1212, 1223 (10th Cir. 2003). There can be little doubt that the district court properly recognized its gate-keeping function. Before permitting Livingston to opine as to Joubran's treatment of Poche, the court allowed Joubran's counsel to repeatedly voir dire the witness and independently asked several questions regarding Livingston's experience diagnosing the need for ERCPs in patients presenting abdominal pain. Only after the court was satisfied that Livingston had the "experience . . . sufficient to form an opinion on these matters" was the testimony allowed. Similarly, when Joubran objected to the Poches' cross-examination of Demarest regarding his procedure for diagnosing duodenum perforations, the court permitted only questions that "this doctor, particularly, has the expertise to answer." Joubran did not object at the time Mackersie provided similar testimony.

Although Joubran frames this issue as one attacking the district court's failure to conduct the proper analysis, he is actually challenging only the manner in which the court considered his objection. Because the court "performed its gatekeeper role in the first

instance," id., we review its application of Daubert for abuse of discretion.


**B**

In a civil action, state law controls whether a witness is competent to testify "with respect to an element of a claim or defense as to which State law supplies the rule of decision." Fed. R. Evid. 601; see also McDowell v. Brown, 392 F.3d 1283, 1295 (11th Cir. 2004); Legg v. Chopra, 286 F.3d 286, 289-93 (6th Cir. 2002). Joubran contends that Wyo. Stat. § 1-12-601 supplies such a rule of decision. That statute provides that a plaintiff alleging negligence by a health care provider who "is certified by a national certificating board or association" must establish that the defendant "failed to act in accordance with the standard of care adhered to by" the certifying body. Id.

Joubran does not argue that evidence as to the standard of care for board-certified gastroenterologists was lacking; the Poches called a board-certified gastroenterologist to provide that testimony. Instead, Joubran claims that § 1-12-601 establishes a per se rule that only board-certified specialists may provide expert testimony against a board-certified specialist. He cites to Legg, in which the Sixth Circuit interpreted a similar Tennessee state statute. 286 F.3d at 290-91. However, the Tennessee statute under consideration in that case expressly provided that individuals lacking board certification are not "competent to testify in any court of law" as to the proper standard of care. Tenn. Code § 29-26-115(b). The text of the Wyoming statute does not include a similar restriction on witness competency—it does not reference witness competency at all, but

- 6 -

simply states the elements of a malpractice action.

Moreover, Wyoming case law belies Joubran's interpretation. In <u>Armstrong v. Hrabal</u>, 87 P.3d 1226 (Wyo. 2004), plaintiffs sought to establish the standards of care for an emergency room physician by introducing testimony from a physician who was board-certified in internal medicine and infectious disease. <u>Id.</u> at 1232-33. The trial court sustained an objection to preclude this testimony on the ground that the proffered expert was "not in the same line of practice." <u>Id.</u> at 1233. The Wyoming Supreme Court reversed, holding that the expert was "sufficiently familiar with the standard of care in treating infectious disease in the emergency room that [his] testimony would assist the jury in determining facts in issue." <u>Id.</u> at 1237.

Neither the text of the statute nor the interpretive Wyoming case law suggests the per se rule Joubran asserts here. Accordingly, the district court did not err by declining to disqualify all medical experts merely because they are not board-certified gastroenterologists.

## C

In addition to his statutory argument, Joubran claims that Livingston, Demarest, and Mackersie were not qualified to provide expert testimony under Fed. R. Evid. 702 and <u>Daubert</u>.[4] We disagree.

---

[4] It is unclear whether Joubran contends that other provisions of Wyoming law supply rules addressing the qualification of experts applicable here through Rule 601. To the extent he advances such an argument, we note that Wyo. R. Evid. 702, like its federal

Continued . . .

The district court did not abuse its discretion in admitting Livingston's testimony. Livingston rendered standard of care opinions regarding two issues: (1) when Joubran should have consulted a surgeon regarding Poche's condition after Poche returned to the hospital; and (2) whether Joubran should have performed the ERCP and sphincterotomy without first performing non-invasive procedures to diagnose Poche's abdominal pain. We are not convinced that the district court made a clear error of judgment in admitting this testimony. Livingston is a general surgeon and chief of the trauma division at a tertiary care center, serves as the Wesley J. Hue Professor of Trauma Surgery at New Jersey Medical School, and has written on abdominal emergencies and abdominal trauma. He encounters six to twelve duodenal injuries a year, including perforations, and his regular duties include diagnosing gastrointestinal perforations and determining whether to operate. As for his qualifications to testify regarding the second issue, Livingston testified he had extensive experience diagnosing abdominal pain, interpreting EGDs, and diagnosing whether ERCPs are necessary as part of his "day-to-day" work.

Joubran's assertions that Livingston was not qualified to testify because he does not perform ERCPs are unavailing. Livingston did not testify about the standard of care in performing ERCPs, nor did he suggest that Joubran negligently conducted Poche's ERCP. Livingston only testified as to the standard of care for deciding whether an ERCP

counterpart, provides that a witness qualifies as an expert if she possesses the "knowledge, skill, experience, training, or education" to assist the trier of fact in understanding the evidence or determining a fact at issue.

is proper and when a surgical consult should be sought—matters in the overlapping areas of expertise of general surgery and gastroenterology.[5]

Joubran similarly argues that the district court erred in permitting the Poches to question Joubran's co-defendants' experts with respect to the standard of care for diagnosing duodenum perforations. Like Livingston, however, these witnesses did not stray from their areas of expertise. Demarest was cross-examined regarding his experience diagnosing abdominal perforations. He is a board-certified general and critical care surgeon, who diagnoses and treats duodenum perforations as "part and parcel of [his] practice." Specifically, Demarest testified that he was experienced in managing duodenum perforations following ERCPs.[6]

Mackersie was also cross-examined regarding his practice in diagnosing duodenum perforations. Like Demarest, Mackersie is a board-certified general and critical care surgeon. Mackersie also testified that he was experienced in managing duodenum perforations following ERCPs. Because none of these witnesses strayed from his qualified area of expertise, we conclude that admitting their testimony fell within the "bounds of permissible choice in the circumstances." McEwen, 926 F.2d at 1554

---

[5] The Wyoming courts have recognized that a standard of care may overlap several disciplines. See Beavis v. Campbell County Mem. Hosp., 20 P.3d 508, 512-13 (Wyo. 2001).

[6] Moreover, Demarest testified that he was not critical of Joubran's treatment, and Joubran agreed that Demarest's testimony did not harm his case.

(quotation omitted).

## D

Joubran further contends that the district court violated the law of the case doctrine by admitting the testimony from Mackersie and Demarest after a magistrate judge denied the Poches' motion to compel an additional deposition of Mackersie. Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." Dobbs v. Anthem, 600 F.3d 1275, 1279 (10th Cir. 2010). But "[o]nly final judgments may qualify as law of the case," Unioil, Inc. v. Elledge (In re Unioil, Inc.), 962 F.2d 988, 993(10th Cir. 1992), and "district courts generally remain free to reconsider their earlier interlocutory orders," Been v. O.K. Indus., 495 F.3d 1217, 1225 (10th Cir. 2007); see also Allison v. Bank One-Denver, 289 F.3d 1223, 1247 (10th Cir. 2002) ("A lower court's ability to depart from its own prior decisions is discretionary.").

The magistrate judge's order upon which Joubran relies was issued in response to a motion filed by the Poches seeking sanctions and an additional deposition of Mackersie. The Poches filed this motion after counsel for a co-defendant instructed Mackersie not to answer questions at his deposition. Although the magistrate judge's order discusses Mackersie's qualifications to opine on gastroenterology issues, it did not purport to be the final order governing the question of admissibility; rather, the order addressed the scope of discovery. Because the order did not finally decide the issue of admissibility, the law of the case doctrine did not preclude the district court's decision to permit Demarest and

Mackersie to testify.[7]

## III

Joubran's final argument is that he was denied a fair and impartial jury because he was not granted extra peremptory challenges, resulting in a jury biased against a defendant of Middle Eastern descent because two jurors shared Poche's military background. Because Joubran did not object below, we review this claim for plain error. See Hidalgo v. Fagen, Inc., 206 F.3d 1013, 1020 (10th Cir. 2000). To establish plain error, Joubran must demonstrate "plain error that affected [his] substantial rights. The plain error exception in civil cases has been limited to errors which seriously affect the fairness, integrity or public reputation of judicial proceedings. It is an extraordinary, nearly insurmountable burden." Phillips v. Hillcrest Med. Ctr., 244 F.3d 790, 802 (10th Cir. 2001).

By statute, each party in a civil case is entitled to three peremptory challenges, but "[s]everal defendants . . . may be considered as a single party for the purposes of making challenges." 28 U.S.C. § 1870. Joubran contends that, although he and his co-defendants were granted a total of three peremptory challenges, he was denied a fair and impartial jury because he was not granted extra peremptory challenges. Due process entitles a civil litigant to a fair trial, including an impartial jury. See Skaggs v. Otis Elevator Co., 164 F.3d 511, 515 (10th Cir. 1998). "To violate due process, the bias must affect the juror's

---

[7] Further, the order does not mention Demerest, and thus cannot govern the admissibility of his testimony.

ability to impartially consider the evidence presented at trial." Id.

Joubran has failed to present evidence demonstrating jurors were plainly biased such that they could not impartially consider the evidence at trial. The mere fact that two jurors had military backgrounds, as did Poche, does not suggest they were biased. Joubran points to an exchange that occurred while Poche was attempting to explain the duties of a warrant officer. Poche directed his testimony to a particular juror, stating: "A warrant officer—how do I explain this? I know you will understand. Maybe you can help explain it." An unidentified juror replied, "Subject matter expert." Although unusual and perhaps even inappropriate, this exchange falls well short of meeting Joubran's "nearly insurmountable burden" to show that a plain error affected his substantial rights and "the fairness, integrity or public reputation of judicial proceedings." Phillips, 244 F.3d at 802.

## IV

For the forgoing reasons, we **AFFIRM**.


Entered for the Court


Carlos F. Lucero
Circuit Judge