NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0060n.06

No. 24-3367

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Feb 03, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| JANICE WELCH, Individually and as Administratrix of the Estate of Deceased John A. Martello, | ) ) ) |
| Plaintiff-Appellant, | ) ) ) ) |
| v. | ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant-Appellee. | ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: CLAY, GIBBONS, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** This case resulted from the death of John A. Martello, a veteran whose abdominal aortic aneurysm (AAA) ruptured while under the care of the Louis Stokes Cleveland Veterans Affairs Medical Center (VAMC), a federally run medical center. His wife, Janice Welch, sued the United States under the Federal Torts Claims Act (FTCA), alleging that the VAMC committed medical malpractice and medical negligence in failing to properly treat Martello. Because the district court did not abuse its discretion in excluding Welch's medical expert under Ohio state law, and because that expert's testimony was necessary for Welch to make out her prima facie case, we **AFFIRM** the district court's grant of summary judgment to the Government.

## I.   BACKGROUND

We relay the facts in the light most favorable to Welch as required at the summary judgment stage. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

In 2011, Martello was diagnosed with an AAA measuring 4.0 centimeters after an ultrasound at the VAMC. Susan Kirsh, Martello's primary care physician, advised Martello to quit smoking cigarettes, to monitor his blood pressure, and to seek medical care if he experienced abdominal pain, chest pain, dizziness, or lightheadedness. The VAMC internal policies require healthcare providers to create and maintain a "problem list" in patients' medical records. The problem list includes up-to-date significant diagnoses, conditions, past procedures, drug allergies, and medications. When Kirsh discovered the AAA, she did not put it on Martello's problem list.

Soon after Martello's AAA diagnosis, Kirsh left the VAMC. Three years after the AAA diagnosis, in 2014, Martello was diagnosed with lung cancer and underwent surgery. A pre-procedure scan revealed that the AAA had grown to 5.8 centimeters. The AAA was still not added to Martello's problems list.

On January 18, 2019, Martello began to experience stomach pain and nausea at around 3:00 p.m. Welch was with Martello, and they thought that he ate bad fish for lunch or might have appendicitis. They went to the VAMC emergency department at approximately 9:00 p.m., where Martello was treated by Nurse Practitioner Sharon David. More than once, David asked Martello whether he had a family or personal history of aneurysms, and each time, Martello said no. The AAA was still not listed on Martello's problem list, and Martello's initial treating physician, Michael Eckstein, believed that Martello's symptoms at the emergency department were not typical of a rupturing AAA.

Eckstein thought that Martello's symptoms indicated appendicitis or septic shock. Given Martello's critical condition, and that he was hypotensive, Eckstein ordered large volume fluid resuscitation and antibiotics. Soon after, the emergency department shift changed, and emergency department physician Susanne Muyshondt took over Martello's care. During Muyshondt's initial

examination of Martello, Martello's blood pressure dropped suddenly, and Muyshondt ordered fluid administration to increase his blood pressure. Then, Martello's symptoms changed, apparently for the first time, to resemble an aneurysm, at which time David reviewed Martello's medical records and saw the 2014 AAA diagnosis. At that point, David and Muyshondt concluded that a rupturing AAA was Martello's most likely diagnosis. The VAMC does not operate on rupturing AAAs, so the attending vascular surgeon, Gilles ordered that Martello be transferred to a nearby hospital for surgery. In the early morning of January 19, 2019, before Martello could be transferred and emergency surgery performed, Martello's AAA ruptured, and Martello passed away.

On March 11, 2019, Welch and Nick Martello, Martello's brother, met with VAMC Risk Manager, Paul DePompei, and Chief of Staff, Brian Cmolik, for an "Institutional Disclosure of Adverse Event." The meeting lasted approximately 1.5 hours. The VAMC representatives expressed their condolences for the loss and discussed the series of medical events leading to Martello's death. The representatives also advised Welch that she had the right to file an administrative tort claim. Nick Martello secretly recorded the conversation, and DePompei later summarized the Institutional Disclosure in a note in Martello's medical record.

On January 13, 2020, Welch, on behalf of Martello's estate and in her individual capacity, filed suit under the FTCA, 28 U.S.C. §§ 2671–2680, 1346(b). The operative Complaint alleges that the VAMC failed to properly treat Martello's AAA from the time of its discovery and to diagnose and treat the AAA at the emergency department on January 18, 2019. Welch brought claims of wrongful death, medical malpractice, negligence, and negligent infliction of emotional distress.

On January 13, 2021, Welch filed a notice to depose a medical expert witness, Kaj Johansen, to testify regarding Welch's medical claims. In his deposition on February 8, Johansen stated that he had retired from clinical practice on June 15, 2020 and no longer saw patients or taught at an accredited medical school. On April 12, 2021, the Government moved in limine to exclude Johansen's testimony because, among other things, Ohio Evidence Rule 601(B) required expert witnesses to spend at least fifty percent of their professional time in clinical practice or instruction at the time of their testimony.

On July 5, 2021, Welch moved for summary judgment. She relied on the Institutional Disclosure recording and summary to argue that, because the VAMC representatives had expressed condolences and advised her of her right to file an administrative tort claim, the Government had admitted that it violated the standard of care. Therefore, she argued, summary judgment in her favor was warranted. In opposition to Welch's summary judgment motion, the Government argued, in part, that the written and recorded evidence of the Institutional Disclosure conversation was inadmissible under the Ohio Apology Statute, Ohio Rev. Code § 2317.43(A)(1), which states:

> In any civil action brought by an alleged victim of an unanticipated outcome of medical care . . . any and all statements . . . expressing apology . . . made by a health care provider . . . are inadmissible as evidence of an admission of liability or as evidence of an admission against interest.

The district court referred the Government's motion in limine and Welch's motion for summary judgment to a magistrate judge. On March 14, 2022, the magistrate judge issued two separate decisions. First, he granted the motion in limine to bar Johansen's testimony under Rule 601(B) in a final order. Second, he issued a report and recommendation to deny Welch's motion for summary judgment.

In the motion in limine order, the magistrate judge explained that Johansen was not a competent expert because he did not meet the clinical practice requirements at the time of testifying. Thus, under Ohio law, his testimony was inadmissible. In the separate report and recommendation, the magistrate judge recommended denying Welch's motion for summary judgment because there existed a genuine dispute of material fact as to whether VAMC's treatment of Martello fell below the standard of care, and Welch was not entitled to judgment as a matter of law because she failed to provide required expert testimony on liability. Over Welch's objection, the district judge adopted the report and recommendation to deny Welch's motion for summary judgment on September 28, 2022.

On July 1, 2023, while discovery was ongoing, an amendment to Rule 601(B) took effect that allowed a retired medical expert to testify if that expert was still practicing at the time the claims in the lawsuit accrued. On July 21, 2023, the Government moved for summary judgment on Welch's claims. The court declined to retroactively apply the 2023 amendment to Rule 601(B) and refused to admit Johansen's testimony; it also ruled that that Welch could not demonstrate a prima facie case for her medical claims without admissible expert testimony, a dispositive component of medical liability claims under Ohio law. And the court further ruled that Welch could not use remarks made at the Institutional Disclosure meeting to establish liability, because the Apology Statute rendered the remarks inadmissible. The district court granted the motion for summary judgment and entered judgment for the Government. Welch's timely appeal followed.

## II.    ANALYSIS

"We review de novo a district court's decision to grant summary judgment." *Tepper v. Potter*, 505 F.3d 508, 513 (6th Cir. 2007). Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a); *Tepper*, 505 F.3d at 513. A genuine dispute of material fact exists if, taking the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The FTCA "permits the government to be sued for injuries caused by the negligence of government employees, acting within the scope of their employment, to the same extent that a private individual would be liable for such negligence." *Brown v. United States*, 462 F.3d 609, 611 (6th Cir. 2006); *see also* 28 U.S.C. § 1346(b). Substantive state law governs the merits of an FTCA claim. *Gallivan v. United States*, 943 F.3d 291, 294 (6th Cir. 2019). The parties rightly agree that Ohio law provides the rule of decision for Welch's claims, because those claims arise out of medical treatment the Government provided Martello in Ohio.

As for Welch's evidentiary claims, we review a court's evidentiary rulings under the "highly deferential" abuse of discretion standard. *Mattingly v. R.J. Corman R.R. Grp.*, 90 F.4th 478, 484 (6th Cir. 2024). "A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 218 (6th Cir. 2019) (quotation omitted).

## A.    Welch's Medical Expert

Federal Rule of Evidence 601, addressing witness competency, states that "in a civil case, state law governs the witness's competency regarding a claim or defense for which state law supplies the rule of decision." Since Ohio state law governs the merits of Welch's FTCA claim, Federal Rule 601 directs us to apply Ohio rules for expert competency. *See Legg v. Chopra*, 286 F.3d 286, 291 (6th Cir. 2002).

Ohio Evidence Rule 601(B)(5) sets forth the competency requirements for "[a] person giving expert testimony on the issue of liability in any medical claim, as defined in [Ohio Revised Code] § 2305.113, asserted in any civil action against a physician, podiatrist, or hospital arising out of the diagnosis, care, or treatment of any person by a physician or podiatrist." Ohio Evid. R. 601(B)(5). Ohio Revised Code § 2305.113(E)(3), in turn, defines a "medical claim" as "any claim that is asserted in any civil action against a physician, podiatrist, hospital, home, or residential facility . . . that arises out of the medical diagnosis, care, or treatment of any person." The same statute defines "hospital" "[a]s used in this section" to exclude "any hospital operated by the government of the United States or any of its branches." *Id.* § 2305.113(E)(1).

Prior to July 1, 2023, Rule 601(B)(5) disqualified experts in medical liability suits who did not devote half of their professional time to clinical practice or instruction "at the time the testimony is offered at trial." *Frank v. Good Samaritan Hosp. of Cincinnati*, No. 23-3275, 2023 WL 6623635, at *1 (6th Cir. Oct. 11, 2023) (quoting *Johnson v. Abdullah*, 187 N.E.3d 463, 468 (Ohio 2021)). The Ohio Supreme Court had strictly applied this rule to mean that the expert witness must meet the clinical practice requirements at the time of trial, with a limited exception where the conduct of the parties delayed trial. *Johnson v. Abudullah*, 136 N.E.3d 581, 592 (Ohio Ct. App.) (citing *Celmer v. Rogers*, 871 N.E.2d 557, 562 (Ohio 2007)).

On July 1, 2023, the Ohio legislature revised Rule 601(B)(5) to permit testimony from experts in medical liability suits who devoted half their professional time to practice or instruction "at either the time the negligent act is alleged to have occurred or the date the claim accrued[.]" Ohio Evid. R. 601(B)(5)(b); *Frank*, 2023 WL 6623635, at *1. Under the revised rule, medical experts are qualified to testify if they met the clinical practice requirements at the time of the alleged medical liability but not at the time of testifying at trial.

Ohio Evidence Rule 1102(Y) provides express instructions regarding retroactive application of the 2023 Rule 601(B) amendment in ongoing litigation. The amended rule would "govern . . . all further proceedings in actions then pending, except to the extent that [its] application in a particular action pending when the amendments take effect *would not be feasible or would work injustice*, in which event the former procedure applies." Ohio Evid. R. 1102(Y) (emphasis added).

As an initial matter, we must determine whether Rule 601(B)(5) applies to determine the admissibility of Johansen's testimony.[1] Welch argues that, while Rule 601(B) generally applies, Rule 601(B)(5) in particular is inapposite in cases involving the VAMC, because such cases do not involve "medical claims" defined by Ohio Revised Code 2305.113 as required for Rule 601(B)(5) to apply. Welch argues that claims against the VAMC, a hospital indisputably run by the federal government, are not claims against "hospitals" as used in the definition of "medical claims" in Ohio Rev. Code 2305.113(E)(1) which excludes hospitals run by the federal government. Welch then argues that Ohio Rev. Code 2305.113(E)(3) defines a "medical claim" as a "claim that is asserted in any civil action against a . . . hospital," so, if her claim is not a claim against a hospital, it is not a "medical claim" under Ohio Rev. Code 2305.113. Thus, Rule 601(B)(5) does not apply.

Ohio Revised Code 2305.113 governs the statute of limitations for state medical claims. The Government argues that the best reading of § 2305.113(E)'s exemption of federal hospitals is that it is a narrow safety valve designed to allow the FTCA's statute of limitations, not Ohio law,

---

[1] The Government argues that Welch waived any argument against the applicability of Rule 601(B) because she did not enumerate the magistrate judge's motion in limine order excluding Johansen's testimony in her notice of appeal, instead designating for appeal only the district court's grant of summary judgment. But the Federal Rules of Appellate Procedure provide that, unless a notice of appeal states otherwise, "specific designations do not limit the scope of the notice of appeal." Fed. R. App. P. 3(c)(6). Welch's arguments are therefore not waived.

to govern claims against federal hospitals like the VAMC. *Cf Kennedy v. U.S. Veterans Admin.*, 526 F. App'x 450, 454 (6th Cir. 2013) (Plaintiffs must "adhere to the FTCA's statute of limitations . . . even though these requirements differ from the applicable state law."). The Government supports this reading by noting § 2305.113(E)'s mandate that the definition applies only "as used in this section," which the Government suggests means that the exclusion of federal hospitals from the term "hospitals" was not meant to carry over into any other Code sections, including the rules of evidence.

A close look at the text of Rule 601(B) makes clear that the exclusion of federal government hospitals found in § 2305.113(E) was not intended to carry over into Rule 601(B). Rule 601(B) provides its own list of medical providers against whom "medical claims" may be brought—that is, a physician, podiatrist, or "hospital." Though Rule 601(B) expressly incorporates the definition of "medical claim" in Ohio Rev. Code 2305.113, it makes no reference to the definition of "hospital" found in the same section and contains no suggestion that the term "hospital" used in Rule 601(B) has any meaning other than its ordinary plain meaning. Further, the term "hospital" in Ohio Rev. Code 2305.113(E)(1) expressly applies "as used in [Section 2305]." Without a textual instruction in Rule 601(B) that the same definition should apply across the Code, applying the definition of "hospital" outside its expressly stated bounds would be contrary to the clear instructions of § 2305.113. We read the term "hospital" in Rule 601(B), therefore, to include federal hospitals, and we agree with the district court that Rule 601(B) governed Johansen's competency to testify about Welch's medical claims.

To be sure, Welch's claim is not that the term "hospital" in Rule 601(B) does not include federal government hospitals. It is that the term "medical claims" does not include claims brought against federal government hospitals. But if the term "medical claim" as used in Rule 601(B)

already encompassed within its meaning the list of entities against whom such a claim could be brought, the narrower list of entities that Rule 601(B) specifies immediately following the term "medical claim"—physicians, podiatrists, and hospitals—would be redundant. *See Williams v. Taylor*, 529 U.S. 362, 404 ("It is, however, a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." (internal quotations omitted)). We conclude, therefore, that Rule 601(B) applies to claims brought against "hospitals" including the VAMC.

Application of then existing Rule 601(B)(5) to Welch's expert, Johansen, when he testified in 2021 shows Johansen was not competent to testify to Welch's medical claims, because he was not devoting at least half of his professional time to active clinical practice or instruction at an accredited medical school. Then, on July 1, 2023, just 20 days before the district court granted summary judgment to the Government, the Ohio legislature amended Rule 601(B) to deem experts competent to testify if they met the clinical practice requirements at the time the complaint was filed. The parties do not dispute that Johansen was devoting half his time to clinical practice when the complaint in this case was filed, but Johansen had retired in June 2020, before introduction of his expert testimony. Therefore, whether Rule 601(B)(5)'s 2023 amendment applies is outcome determinative as to whether Johansen's testimony is admissible. Welch argues that the amendment should apply retroactively to render Johansen's testimony admissible.

In its summary judgment order, the district court declined to apply the Rule 601(B)(5) amendment that would have authorized Johansen's testimony. The court acknowledged that, under Rule 1102(Y) the amendment would apply in "further proceedings in actions then pending"—which would include Welch's case—unless its application "would not be feasible or

would work injustice." Ohio Evid. R. 1102(Y). But the court found that application of the amendment would not be feasible or appropriate in Welch's case.

In *Frank*, we confronted a similar issue. 2023 WL 6623635, at \*3. The plaintiff in *Frank* had proffered an expert whose testimony was inadmissible under the old Rule 601(B) but admissible under the 2023 amendment, because he had retired after the suit was filed. Before Rule 601(B)(5)'s amendment, Frank had several opportunities to find a qualified medical expert but "didn't act diligently." *Id*. After the amendment, and after we had affirmed the district court's grant of summary judgment to the hospital defendant, the plaintiff moved the court to set aside its judgment. *Id.* at \*1. The district court declined to do so, and we held that the district court did not abuse its discretion in declining to grant relief, because the plaintiff had multiple opportunities to present a competent expert witness under Rule 601(B)(5) before the 2023 amendment. *Id.* at \*3.

In this case, when the Government moved for summary judgment, litigation had been ongoing for years. On April 22, 2021, the Government challenged Johansen's competence under Rule 601(B)(5)'s clinical practice requirement. Welch had opportunities to seek a competent medical expert but did not do so because she "remained cautiously optimistic" that the Ohio legislature would amend Rule 601(B)(5). Reply Br., ECF No. 27, 22. Although the Ohio legislature did eventually amend the rule, by that time, fact discovery in this litigation was almost complete. On this record, the district court did not abuse its discretion when it declined to retroactively apply the Rule 601(B)(5) amendment and admit Johansen's testimony.

### B. Institutional Disclosure Evidence

Welch next argues that the district court erred when it did not admit evidence of her conversation with Cmolik and DePompei at the Institutional Disclosure meeting. Welch argues

that this evidence was admissible and sufficient to replace any needed expert testimony because the recorded conversation includes the Government's concession of liability.

We begin with the Ohio Apology Statute. The FTCA instructs us to apply substantive state law, while federal rules govern procedure in FTCA actions brought in federal court. *Gallivan*, 943 F.3d at 294. Absent a directly conflicting federal rule, we must ask whether the evidentiary rule is substantive or procedural *See id.*; 28 U.S.C. § 1346. In the analogous *Erie* context, we have explained that state evidentiary rules are substantive when they are intimately intertwined with a state substantive rule, such as when they are directly implicated in establishing an element of a legal claim. *Legg*, 286 F.3d at 290; *see also Gallivan*, 943 F.3d at 293 (applying the *Erie* framework to the substantive-procedural distinction in FTCA claims). The Ohio Apology Statute dictates that

> In any civil action brought by an alleged victim of an unanticipated outcome of medical care . . ., any and all statements, affirmations, gestures, or conduct expressing apology, sympathy, commiseration, condolence, compassion, error, fault, or a general sense of benevolence that are made by a health care provider, an employee of a health care provider, or a representative of a health care provider to the alleged victim, a relative of the alleged victim, or a representative of the alleged victim, and that relate to the discomfort, pain, suffering, injury, or death of the alleged victim as the result of the unanticipated outcome of medical care are inadmissible as evidence of an admission of liability or as evidence of an admission against interest.

Ohio Rev. Code § 2317.43(A)(1). The statute expressly governs the use of evidence to demonstrate a provider's "liability," directly implicating the establishment of underlying medical claims. Because the Apology Statute is intertwined with proving medical liability under Ohio law, it is substantive under the FTCA, and the district court rightly applied it in this case. *See Legg*, 286 F.3d at 290.

The Ohio Supreme Court has explained that the meaning of "apology" in the Ohio Apology Statute is broad and unambiguous. *Stewart v. Vivian*, 91 N.E.3d 716, 720-722 (Ohio 2017). A

statement can be an apology even when it includes "an acknowledgment that the patient's medical care fell below the standard of care." *Id.* at 721. The district court determined that evidence from the Institutional Disclosure meeting was thus inadmissible to establish the VAMC's liability under the Apology Statute.

Welch argues that the district court abused its discretion in excluding the Institutional Disclosure meeting recording because the meeting did not include an apology. Instead, Welch argues, the meeting included a statement of disclosure from an institution, not apologies from individuals, and that "a sincere apology should comprise a sentence or two, not almost [1.5] hours of damage control" including "the advisability of having legal representation." In the Institutional Disclosure meeting, Cmolik and DePompei expressed condolences to Welch and apologized for her loss. Welch's argument that an institution like the VAMC cannot apologize through representatives like Cmolik and DePompei is contrary to the plain text of the Apology Statute, which states that "a representative of a health care provider" can express an apology. Ohio Rev. Code § 2317.43(A)(1). In this case, Cmolik and DePompei participated in the Institutional Disclosure conversation as VAMC representatives and could have made a qualifying apology in those roles. *See id.* Further, as the Ohio Supreme Court has explained, "apology" has a broad meaning, and that broad meaning could encompass a 1.5 hour conversation. *See Stewart*, 91 N.E.3d at 720-22. To the extent Welch rests her argument on Cmolik and DePompei's references to her right to file an administrative tort claim regarding liability, the Ohio Supreme Court has spoken: An apology can include an acknowledgment of potential liability. *See id.* On this record, therefore, the district court did not abuse its discretion in finding the contents of the Institutional Disclosure inadmissible under the Ohio Apology Statute.

## C.      Summary Judgment

Under Ohio law, to establish medical liability, a plaintiff must show that a provider deviated from the ordinary standard of care and that the deviation caused her injury. *See Bruni v. Tatsumi*, 346 N.E.2d 673, 677 (Ohio 1976). The standard of care must be established by expert testimony, *id.*, and failure to provide expert testimony "'is fatal to the presentation of a prima facie case of medical negligence.'" *Stuck v. Mia. Valley Hosp.*, 141 N.E.3d 290, 298 (Ohio Ct. App. 2020) (quoting *Grieser v. Janis*, 100 N.E.3d 1176, 1183 (Ohio Ct. App. 2017)).

Ohio law recognizes a "common knowledge" exception to the requirement of expert testimony where "the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it." *Bruni*, 346 N.E.2d at 677. In *Dimora v. Cleveland Clinic Foundation*, for example, a nurse left a patient with known balance difficulties alone with her walker, and the patient fell. 683 N.E.2d 1175, 1180 (Ohio Ct. App. 1996). Because a layperson could evaluate whether the nurse's actions deviated from the ordinary standard of care, the common knowledge exception applied, and expert testimony was unnecessary. *Id.* Similarly, in *Berdyck v. Shinde*, the Ohio Supreme court explained that expert testimony was unnecessary for a patient's claim that a hospital was negligent in leaving her unattended, resulting in a fall from her hospital bed. 613 N.E.2d 1014, 1022 (Ohio 1993). But the common knowledge exception has a limited scope. *See Culp v. Olukoga*, 3 N.E.3d 724, 745-46 (Ohio Ct. App. 2013) (finding that expert testimony was necessary to support a claim that a nurse negligently placed an interscalene block in anticipation of shoulder surgery and that medical providers negligently failed to diagnose the patient's collapsed lung).

In granting the Government summary judgment on Welch's medical claims, the district court reasoned that Welch's claims required the testimony of a qualified medical expert to establish the standard of care. Because Johansen's testimony was inadmissible, and Welch offered no other expert testimony, the district court found that Welch's claims failed as a matter of law.

On appeal, Welch first challenges the district court's conclusion that her claims were the type of medical claims requiring expert testimony under Ohio law. Welch argues that under Ohio law, there are two types of medical claims: medical malpractice claims and medical negligence claims. The former, she argues, require expert testimony while the latter involve routine errors that do not require an expert to exact the standard of care.

Welch does not offer any support for the claim that Ohio law distinguishes between medical malpractice and medical negligence—Ohio law does not indicate that medical claims styled as "medical negligence" are different than medical claims styled as "medical malpractice." Rather, Ohio courts have required expert testimony to establish the standard of care in both claims. *See Stuck*, 141 N.E.3d at 298 ("medical negligence"); *Bruni*, 346 N.E.2d at 677 ("medical malpractice").

Welch next argues that the common knowledge exception applies to this case, and it is common knowledge that VAMC healthcare providers should have added the AAA to Martello's problem list. But this case is distinguishable from the narrow set of cases in which Ohio courts have applied the exception to risks laypeople know about and comprehend the extent of—for example, tripping and falling. *See Dimora*, 683 N.E.2d at 1180. Welch's claim implicates the knowledge of healthcare professionals, and a layperson, without expert testimony, would not know the standard for treating and diagnosing a rupturing AAA. *See Culp*, 3 N.E.3d at 745-46. Therefore, the common knowledge exception does not apply.

-15-

Welch then suggests that, despite Ohio law's requirement of expert testimony, she can substitute record evidence such as witness testimony and responses to interrogatories to establish the standard of care. She proffers internal VAMC policies that require healthcare providers to establish and maintain a patient's problem list, and testimony of the Government's Rule of Civil Procedure 30(b)(6) designee, Selena Moore, to the problem list's function in a patient's medical chart. Welch argues that these establish the standard of care for whether the AAA should have been on Martello's problem list, which she considers central to the AAA's treatment and rupture diagnosis, relying on *Johnson v. Hammond*, 547 N.E.2d 1004, 1007 (Ohio Ct. App. 1988). In that case, the court classified the cross-examination of the defendant physician as expert testimony for purposes of establishing the standard of care in a medical claim. *Id.* In this case, however, Welch does not attempt to establish the standard of care through cross-examination of a physician. Instead, she seeks to establish the standard of care through other non-expert evidence. Ohio courts do not recognize such an exception to the expert requirement. *See Bruni*, 346 N.E.2d at 677.

Finally, Welch argues, for the first time on appeal, that the doctrine of res ipsa loquitur applies to her case, obviating the need for expert testimony. But we will not "entertain new claims raised for the first time on appeal," because those claims are forfeited. *Greco v. Livingston Cnty.*, 774 F.3d 1061, 1064 (6th Cir. 2014) (citing *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008)). Regardless, Ohio courts have explained that "the doctrine of *res ipsa loquitur* does not obviate the requirement that the plaintiffs provide expert medical testimony on the standard of care[.]" *Johnson*, 547 N.E.2d at 1006.

Because Ohio law requires expert testimony in support of medical claims and Welch showed no applicable exception to that requirement, the district court properly granted summary judgment to the Government.

## III.  CONCLUSION

The district court properly excluded Welch's expert testimony and granted the Government summary judgment.  Accordingly, we **AFFIRM** the judgment of the district court.