**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 12a0333n.06

**No. 10-5534**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ILSE BOCK, Individually and as Next of Kin, Surviving Spouse, Next Friend and Personal Representative of Hans Bock, Deceased, | ) ) ) ) | |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| UNIVERSITY OF TENNESSEE MEDICAL GROUP, INC., | ) ) ) | COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| Defendant-Appellee. | ) ) | |

**FILED**

***Mar 26, 2012***

LEONARD GREEN, Clerk

**Before: BOGGS and WHITE, Circuit Judges; and BERTELSMAN, District Judge.**[*]

BOGGS, Circuit Judge. This medical malpractice case was brought on behalf of Hans Bock, who died due to internal bleeding following cancer treatment. This appeal presents the question of whether plaintiff's expert witness was competent and qualified to testify. The district court granted defendant's motion for summary judgment, finding the witness lacked sufficient expertise in the area of liver cancer to be allowed to testify. Among other reasons, the court cited the fact that the witness had only treated a patient with liver cancer once in his career, and never performed the chemo-embolization and radiofrequency-ablation procedures on which he was offered to opine. The court found the witness lacked the requisite appropriate expertise, and was not competent to testify about

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

the appropriate standard of care. In light of a recent change in the standard for competency of experts under Tennessee law, *Shipley v. Williams*, 350 S.W.3d 527 (2011), we reverse and remand.

**I**

Hans Bock was a patient at the University of Tennessee Bowld Hospital in Memphis from September 22, 2003 until his death on October 15, 2003. District Court Op. at 2. He was admitted for treatment by the physicians of the University of Tennessee Medical Group, Inc. ("UTMG") for hepatoma secondary to Hepatitis C. *Ibid*. An affidavit submitted by UTMG from Dr. Phillip Zeni, an interventional radiologist, describes the course of treatment provided to Mr. Bock as follows:

> [Mr. Bock] underwent a chemo-embolization on September 23, 2003. The following day, Mr. Bock underwent a radiofrequency ablation procedure. This procedure was complicated by a drop in blood pressure due to bleeding at the hepatic puncture site. Mr. Bock was resuscitated in the operating room with placement of a cardiac central line, but his blood pressure continued to drop. An anteriogram [*sic*] was performed which revealed active bleeding at a branch of the right hepatic artery from a non emoblized tumor [*sic*] at the right upper pole of the liver. This bleeding was stopped by emoblization [*sic*] and he was given four units of blood and two units of plasma. The patient was stabilized and transferred to the intensive care unit.

*Ibid.* Mr. Bock suffered from post-surgical internal bleeding and succumbed to hypoxia, dying on October 15, 2003. *Ibid.*

On October 15, 2004, plaintiff filed suit alleging negligence, medical malpractice, and wrongful death against UTMG, Dr. Rene Davila, Dr. Abbas Chamsudin, Shelby County Healthcare Corporation, the Regional Medical Center, Tabitha Young Bailey, and others, in the Circuit Court for Shelby County, Tennessee, *Id.* at 3. On October 5, 2007, plaintiff non-suited her case against the two remaining defendants, Dr. Rene Davila and UTMG—at that point, for reasons unclear from the

record, all other defendants were no longer part of the state court action. *Ibid.* On September 30, 2008, the Plaintiff filed this suit in the United States District Court for the Western District of Tennessee against UTMG only. *Ibid.*

The district court noted that the parties did not dispute the facts regarding UTMG's provision of medical services to Mr. Bock. The sole legal question presented was whether the physicians breached the standard of care.

UTMG filed a motion for summary judgment, arguing that Plaintiff's sole expert, James H. Shull, M.D. ("Dr. Shull"), was not competent to provide opinion testimony, and therefore, plaintiff could not establish the elements of her cause of action. *Ibid.* The court granted UTMG's motion for summary judgment, noting that Dr. Shull "treated a patient with liver cancer only once in his career; that he has never performed chemo-embolization or radiofrequency ablation; that he has never referred anyone to have these procedures performed; that he has never recommended these procedures; and that he has never monitored a patient who is recovering from either procedure," and "never . . . treated a patient following chemo-emoblization [*sic*] and/or radiofrequency ablation." *Id.* at 10-11. Due to his "complete lack of experience with the two procedures in question," the district court found that he was "clearly not competent to testify regarding whether it was appropriate to perform chemo-embolization and radiofrequency ablation . . . or whether Mr. Bock received appropriate post-procedure care immediately afterwards." *Id.* at 10.

This court reviews an order granting a motion for summary judgment de novo. *Cavin v. Honda of America*, 346 F.3d 713 (6th Cir. 2003).

No. 10-5534
*Bock v. UT Medical Group, Inc.*

## II

It is black-letter law that federal courts sitting in diversity apply state substantive rules of decision, *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and the federal rules of procedure. *Hanna v. Plumer*, 380 U.S. 460 (1965). However, the Supreme Court has not directly addressed the interaction of the *Erie* doctrine with the Federal Rules of Evidence.[1] Specifically, in the context of the admissibility of expert-witness testimony, it is somewhat unclear how Fed. R. Evid. 601—which determines witness *competency* based on state law for claims where "State law supplies the rule of decision"—interacts with Fed. R. Evid. 702—which determines witness *qualification* based on federal law under *Daubert* and its progeny. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

In this diversity action, Tenn. Code Ann. § 29-26-115(b) provides the rule of decision to determine expert witness competency in malpractice cases. It provides:

> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available. Tenn. Code Ann. § 29-26-115(b).

---

[1] Robin Kundis Craig, *When Daubert Gets Erie: Medical Certainty and Medical Expert Testimony in Federal Court*, 77 DENV. U. L. REV. 69, 81-87 (1999) (observing that for varied reasons, "most circuits have held that state evidentiary rules that have a substantive impact on the decision will trump the Federal Rules of Evidence.").

No. 10-5534
*Bock v. UT Medical Group, Inc.*

In considering Tenn. Code Ann. § 29-26-115(b), we have reconciled the tensions between Rules 601 and 702 by separating these two inquiries.[2]   First, we consider witness competency—which "is 'intimately intertwined' with the [state] substantive law"— a substantive consideration under Rule 601.  *Legg v. Chopra*, 286 F.3d 286, 291 (6th Cir. 2002).  Second, we consider the witness's qualification, a "procedural" gatekeeping consideration under Rule 702 and *Daubert*. *Id.* at 291-92.  ("We therefore find no conflict between Tenn. Code Ann. § 29-26-115(b) and Fed. R. Evid. 702, since the first is directed at establishing the substantive issue in the case, and the second is a gatekeeping measure designed to ensure "fairness in administration" of the case.").  For the former inquiry, the *Legg* court found that  "§ 29-26-115(b), via Rule 601" "reflects the intimate relationship between the standard of care and the qualification requirements of the medical expert who will establish that standard." *Id.* at 291.   For the latter, the Rule 702 and *Daubert* inquiry is "directed at the science and methodology behind the witness's testimony," a question of scientific qualification. *Ibid*.

---

[2] The *Legg* court had no occasion to opine on "any potential conflict between application of Rule 702 and other state medical certainty standards pertaining to burden of proof and admissibility"—or qualification for that matter—"because such is not at issue in [that] case." *Id.* at n.4.  Indeed, the Tennessee statute in question lends itself nicely to the competency/qualification distinction, because the statute speaks in terms of whether a witness is "competent to testify." *See Ralph by Ralph v. Nagy*, 749 F. Supp. 169, 172-74 (M.D. Tenn. 1990) ("Because this Court views Rule 601 as more closely applicable than Rule 702 to the present issue involving the *competency* of the New York doctors to testify in a malpractice case involving questions of Tennessee law, this Court holds that Rule 601 controls in determining this Motion.") (emphasis added).

**III**

Under *Legg*, the district court must first determine whether the witness was competent to testify under "§ 29-26-115(b), via Rule 601." *Legg*, 286 F.3d at 291. Tenn. Code Ann. § 29-26-115(b) provides that a witness is "competent to testify" if he or she:

> was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

The district court resolved this case, in part, based on *Eckler v. Allen*, which held that "a proffered expert's knowledge of the standard of care in a profession or specialty [must] be obtained through personal, firsthand experience either in the community or a similar community." District Ct. Op. at 12 (citing 231 S.W.3d 379, 386-87 (Tenn. Ct. App. 2006)). The Supreme Court of Tennessee reconsidered the *Eckler* standard in *Shipley v. Williams*, decided on August 11, 2011. 350 S.W.3d 527 (2011). In the context of Tennessee's locality rule, the court expressly rejected *Eckler*:

> Thus, in *Eckler,* the court for the first time imposed a "personal, firsthand, or direct knowledge" requirement upon an expert, in effect holding that an expert's attempts to educate himself or herself on the standard of care in a community where the expert has not practiced will always fall short, because the expert has not obtained "personal, firsthand, direct" knowledge of the medical community. . . . Based on the above review, we conclude that the holding in *Eckler* cannot be extrapolated to require that an expert's comparison of a standard of care in a community in a contiguous state to a standard of care in the community of the alleged malpractice be made solely on the basis of personal knowledge. If the expert is otherwise qualified, it is enough if he or she is actually practicing in some community in a contiguous state, and "connects the dots" between the standard in that community and the community where the alleged malpractice occurred . . . .

*Shipley*, 350 S.W.3d at 548-51.

In light of *Shipley*, Bock asks this court to remand for further proceedings, arguing that because her expert is not required to demonstrate firsthand and direct knowledge of a medical community and the appropriate standard of medical care there, Dr. Shull is competent to testify. UTMG disagrees, and would confine *Shipley* to an explication of Tennessee's "locality rule." UTMG argues that *Shipley* has "nothing to do with" the district court's analysis. "Dr. James Shull practices in the very community in which the alleged acts/omissions occurred: Memphis, Shelby County, Tennessee." UTMG argues that *Shipley* did not reject the *Eckler* requirement that an expert have "personal, firsthand, direct knowledge." Rather, it merely rejected that such "personal, firsthand, direct knowledge" must be obtained in a specific location.

Recently, the Tennessee Court of Appeals seemed to agree with UTMG's characterization of *Shipley* as limiting the holding to the locality rule: "*Shipley* expressly rejected the requirement that a medical expert have 'personal, firsthand, direct knowledge' of the standard of care *in the defendant's community* in order to offer expert testimony on that standard." *Walker v. Garabedian*, 2011 WL 6891575, at *6 (Tenn. Ct. App. Dec. 28, 2011) (emphasis added). Specifically, it said that the *Shipley* court found that an "expert who opines that a national standard of care applies should not be per se disqualified from offering testimony at trial." *Ibid.*

The district court relied on *Eckler*. *See* District Ct. Op. at 11 ("Never having treated a patient following chemoemoblization [*sic*] and/or radiofrequency ablation, Dr. Shull lacks any *firsthand* knowledge of what the standard of care required post-procedure as to diagnosing or treating internal bleeding.") (emphasis added). However, it is somewhat unclear whether the district court's application of *Eckler* was only in the context of Tennessee's locality rule—the rationale rejected in

*Shipley*—or more broadly focused on Dr. Shull's competency, without regard to the locality—a position that arguably is still good law, even after *Shipley*. In light of the changed landscape in Tennessee law, the record before us does not permit a resolution of that issue on appeal. The Tennessee Court of Appeals's resolution in *Walker* guides us in this close case:

> We must reluctantly conclude that a remand is the only appropriate course of action under the circumstances. The standard utilized by the trial court below and the parties shifted substantially in the wake of *Shipley*, and given the trial court's discretion in determining the admissibility of evidence, the trial court should have the opportunity to reconsider its decision with the benefit of the argument of counsel on the impact of *Shipley*.

*Walker*, 2011 WL 6891575 at *7.

Remand is necessary to determine whether under Tenn. Code Ann. § 29-26-115(a)(1) as construed in *Shipley*, Dr. Shull is competent to testify about each of the three questions at issue: (1) were the decisions to perform the chemo-embolization and radiofrequency ablation made in accordance with the appropriate standard of care?; (2) were the procedures performed in accordance with the appropriate standard of care?; and (3) was Bock's treatment after the procedure performed in accordance with the appropriate standard of care? The answer may be yes to some questions, and no to others.

**IV**

Considering that the state substantive rule of decision under Rule 601 to determine competency is only the beginning; this first step "does not completely end our analysis." *Legg,* 286 F.3d at 291-92. Second, the district court must exercise its role as a gatekeeper, and consider the qualifications of the expert under *Daubert*. "[I]f a witness is deemed competent to testify to the

substantive issue in the case, such as the standard of care, his or her testimony should then be screened by Rule 702 to determine if it is otherwise admissible expert testimony." *Ibid.* Competency under Rule 601 is a necessary, but not a sufficient, condition for qualification under Rule 702. On remand, if Dr. Shull is found competent under state law per Rule 601, the district court must then consider Dr. Shull's qualifications under Rule 702.

## V

The judgment of the district court is REVERSED and REMANDED for proceedings consistent with this opinion.