NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1002n.06

**No. 13-5340**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

```
FILED
Nov 25, 2013
DEBORAH S. HUNT, Clerk
```

| | |
|---|---|
| ILSE BOCK, Individually and as next of kin, surviving spouse, next friend and personal representative of Hans Bock, deceased, | ) ) ) ) |
| Plaintiff-Appellant, | ) ) |
| v. | ) ) ) |
| UT MEDICAL GROUP, INC., | ) ) |
| Defendant-Appellee. | ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE

Before:  SILER, COLE, and COOK, Circuit Judges

PER CURIAM.  This medical malpractice action returns for consideration of the district court's exclusion of plaintiff's medical expert, Dr. James Shull, under Tennessee Code Annotated § 29-26-115(b).  We revisit the relevant facts, thoroughly detailed in our prior opinion, *Bock v. University of Tennessee Medical Group, Inc.*, 471 F. App'x 459 (6th Cir. 2012) ("*Bock I*"), only as necessary for the purposes of this appeal.

*Bock I* examined this expert-witness competency issue in light of new law from the Tennessee Supreme Court decision in *Shipley v. Williams*, 350 S.W.3d 527, 550–54 (Tenn. 2011), that broadened the range of competent experts under the state's locality rule.  Because the district court relied on a standard overruled by *Shipley*, we remanded with instructions for the district court

to determine the same witness's competency under § 29-26-115 to testify as to the standard of care regarding: (1) whether to perform chemo-embolization and radiofrequency ablation on plaintiff's husband, Hans Bock; (2) the performance of those procedures; and (3) post-operation care. *Bock I*, 471 F. App'x at 463–64. The district court complied, disqualifying Dr. Shull from testifying on any of these issues because he did not "practice a profession or specialty within the year preceding the alleged wrongful acts leading to Mr. Bock's death" that would make his testimony relevant under § 29-26-115(b). Because of the exclusion, plaintiff defaulted an essential element of her malpractice claim, resulting in summary judgment for the defendant, UT Medical Group, Inc. Ilse Bock appeals, renewing the arguments she presented on summary judgment. We AFFIRM.

This appeal focuses on an aspect of Tennessee's competency statute left undisturbed by *Shipley*: subsection (b)'s requirement that the licensed medical expert "practice[] [a relevant] profession or specialty in [Tennessee or a bordering state] during the year preceding the date that the alleged injury or wrongful act occurred." Tenn. Code Ann. § 29-26-115(b); *see Shipley*, 350 S.W.3d at 550 (acknowledging subsection (b)'s preceding-year relevant-practice rule). To clear this hurdle, the expert need not practice the same specialty as the defendant, *Searle v. Bryant*, 713 S.W.2d 62, 65 (Tenn. 1986), but still must "practice in a profession or specialty 'which would make the person's expert testimony relevant to the issues in the case' during the year preceding the occurrence," *Bravo v. Sumner Reg'l Health Sys., Inc.*, 148 S.W.3d 357, 365 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 29-26-115(b)); *accord Shipley*, 350 S.W.3d at 550. Such "practice" may include experiences other than the treatment of patients. *See Bravo*, 148 S.W.3d at 367–68

(deeming competent for an obstetrics issue a board-certified obstetrician-gynecologist who, among other things, taught and attended obstetrics classes during the relevant time period). A witness may not, however, "simply testify[] as to a general standard of care expected of all physicians." *McDaniel v. Rustom*, No. W2008-00674-COA-R3-CV, 2009 WL 1211335, at *8 (Tenn. Ct. App. 2009) (collecting authority). Rather, "the witness must be sufficiently familiar with the standard of care of the profession or specialty and be able to give relevant testimony on the issue in question." *Cardwell v. Bechtol*, 724 S.W.2d 739, 754 (Tenn. 1987).

As the district court explained, Dr. Shull failed to show that he practiced a specialty relevant to the three medical issues involved in this case during the year preceding the alleged malpractice. With regard to the liver-cancer treatments—chemo-embolization and radiofrequency ablation—the court found:

> Dr. Shull is a general practitioner who has not performed surgery in a hospital setting for any condition, much less liver cancer, since 1998 or 1999. Although Dr. Shull states he has remained current with his continuing education requirements and subscribes to two national journals, that he was a Consulting Staff Physician at St. Francis, and that he has regularly reviewed the records of patients receiving hospital care in 2002 and 2003, he gives no indication as to why these assertions qualify him under [§ 29-26-115(b)] as someone who has practiced a relevant profession or specialty in 2002 or 2003. . . .

> In contrast, Dr. Shull admits he has only treated a patient with liver cancer once in his career and that was before 1999. Dr. Shull further admits he has never performed a chemo-embolization or radiofrequency ablation. Dr. Shull has neither referred anyone to have these procedures performed by another physician nor recommended these procedures. It seems clear to the Court that Dr. Shull, in 2002 and 2003, was not practicing a profession or specialty that would make his testimony as to the

applicable standard of care in recommending or performing a chemo-embolization or a radiofrequency ablation relevant.

(R. 158, Order at 10.)

Mrs. Bock does not dispute these facts, and Dr. Shull ostensibly concedes a lack of expertise on these two medical procedures. (*See* R. 134-4, Shull Dep. at 57–58, (qualifying his expertise as "the standard of care of intra-abdominal bleeding and the complications of . . . interventional radiology and the failure to diagnose intra-abdominal bleeding").) We therefore affirm the district court's judgment excluding Dr. Shull's testimony about these procedures.

As for the "closer question" of Dr. Shull's expertise on post-operative care, the court found:

Again, Dr. Shull's practice in 2002 and 2003 was a general practice, not a surgical practice. Although Dr. Shull had privileges at St. Francis Hospital, he had not treated a patient in a hospital setting since 1998. Dr. Shull's own words indicate he was engaged in a substantially different type of practice in 2002-2003 than what is at issue here:

> The type of medical care and/or post operative medical care and treatment rendered to Hans Bock, deceased, is no different than the type of medical care that I have provided to patients in Memphis, Shelby County, Tennessee since 1986 *up to 1998 and/or 1999* as a private physician, emergency room physician, surgeon, admitting and/or consulting physician.

The Court finds enough of a distinction between the practice of post-operative care in a hospital setting and a general practice to hold that Dr. Shull was not engaged in the practice of a profession or specialty that would allow him to give testimony relevant to the issue before the Court.

(*Id.* at 11–12 (citations omitted).) Addressing Dr. Shull's asserted expertise in the treatment of intra-abdominal bleeding, the court rejected his "generalized" evidence "of continuing medical education, subscriptions to medical journals, his privileges as [a hospital's] Consulting Staff Physician . . . , and his review of medical charts of hospitalized patients." (*Id.* at 12–13.)

Mrs. Bock counters with lengthy excerpts from Dr. Shull's affidavit, detailing his pre-1999 surgical practice and post-1999 general practice. Conspicuously absent from the description of his post-1999 practice are specific experiences—*e.g.*, diagnosis or treatment of patients, teaching, professional consultation—involving the post-operative care of patients undergoing surgical procedures similar to Mr. Bock. As explained above, Dr. Shull lacks sufficient familiarity with the two procedures performed on Mr. Bock.

The district court appropriately performed the screening function codified in § 29-26-115(b). We therefore affirm the grant of summary judgment.