Herbert E. ROSE, Sr., and Jeannine Marie Rose, Plaintiffs/Appellants,

v.

H.C.A. HEALTH SERVICES OF TENNESSEE, INC., et al., Defendants/Appellees.

Daniel D. HOFFMAN, Plaintiff/Appellant,

v.

H.C.A. HEALTH SERVICES OF TENNESSEE, INC., et al., Defendants/Appellees.

Court of Appeals of Tennessee, Western Section, at Nashville.

Nov. 27, 1996.

Application for Permission to Appeal Denied by Supreme Court May 5, 1997.

Larry D. Wilks, Sidney W. Gilreath, Nashville, Gregory D. Smith, Clarksville, for Plaintiffs/Appellants.

C.J. Gideon, Jr., William S. Walton, Nashville, for Defendants/Appellees.

## OPINION

LILLARD, Judge.

This case involves two cases consolidated on appeal, the first filed by plaintiff Herbert Rose ("Rose") and the second by plaintiff Daniel Hoffman ("Hoffman"). Both cases are medical malpractice actions involving the use of pedicle screws in spinal column surgery. In both, the trial court granted summary judgment in favor of defendant H.C.A. Health Services of Tennessee, Inc., d/b/a Centennial Medical Center ("CMC"). Both plaintiffs submitted affidavits from the same expert, and the trial court disallowed the affidavits of the plaintiffs' expert on the basis that he did not meet the requirements of Tenn.Code Ann. § 29–26–115(b). We affirm.

Rose and Hoffman both underwent back surgery at CMC. The surgery on both plaintiffs was performed by Dr. David McCord ("McCord"). In both cases, McCord utilized a surgical procedure involving the use of pedicle screws in the spinal column. In Rose's case, it was later discovered that one of the pedicle screws had loosened. Subsequently, Rose had further surgery to remove the medical instrumentation that McCord had placed in his back. Nineteen months after this operation, Rose saw an episode of the television series 20/20 which featured a segment on the problems associated with pedicle screws used in back surgery. He filed suit against the manufacturer, McCord, Tennessee Spine Center, Inc., and CMC.

Hoffman also developed problems with the pedicle screws used in his spine. A myelogram CAT scan performed in December of 1993 revealed that some of the pedicle screws had broken. After Hoffman watched the same 20/20 episode Rose had seen, he also filed suit against the same four defendants. Both plaintiffs were represented by the same attorneys. Both lawsuits alleged that CMC had been negligent in allowing McCord to perform surgery at the hospital and in failing to properly monitor his use of pedicle screws, allegedly used in a manner not approved by the FDA. CMC filed motions for summary judgment in both cases. In support of both motions, CMC filed affidavits from Wanda Scharf ("Scharf") and Teresa Adler ("Adler").

Scharf, CMC's medical staff coordinator, indicated that she was familiar with the accepted standards of hospital practice in the Nashville community for credentialing of physicians applying for and reapplying for staff privileges. Scharf stated that CMC complied with those standards in evaluating McCord and granting him staff privileges at the hospital, that McCord was not an employee of CMC during the times in question, and that CMC "did not exercise control over the precise methods or means employed by Dr. McCord in his treatment of Herbert Rose [and Daniel D. Hoffman]." Scharf added, "Dr. McCord exercised his independent judgment and experience, as a physician, in deciding what treatment choices to make."

Adler, a licensed registered nurse, indicated that she was familiar with the recognized standard of care in the operation of a surgical department at a hospital in the Nashville community. She stated that CMC was not involved in selecting the surgical instruments used by surgeons with staff privileges. Adler noted that surgeons with staff privileges were responsible for deciding what equipment to use. She stated that the surgeons informed CMC what equipment to order for any particular operation and that CMC merely provided the equipment as requested. Adler maintained that this procedure was followed in both Rose's and Hoffman's cases and that it complied with the standard of care in Nashville.

Both Rose and Hoffman responded to CMC's summary judgment motion with an affidavit from Arthur Kaufman, M.D. ("Kaufman"), who had been teaching and practicing "administrative medicine" since the early 1970's. Kaufman opined that the hospital failed in its duty to ascertain the regulatory status of the pedicle screws when it acquired them for McCord. CMC moved the trial court to strike Kaufman's affidavit on the basis that Kaufman, licensed only in Maryland and West Virginia during the year prior to the alleged negligence in both cases, was not a competent witness, having failed to meet the statutory requirements of Tenn.Code Ann. § 29–26–115(b), requiring health care experts in malpractice actions to be licensed in Tennessee or a contiguous state. Rose and Hoffman filed affidavits from their two attorneys and Kaufman stating that they had diligently searched for an expert in Tennessee or a contiguous state but had been unable to locate one. Both plaintiffs requested a waiver of the contiguous state licensing requirement in Tenn.Code Ann. § 29–26–115(b). In response, CMC filed three affidavits listing the number of hospitals in Tennessee and Arkansas and the number of physicians operating within Tennessee and its contiguous states. The trial court denied the motions for waiver, granted the requests to strike Kaufman's affidavit, and awarded summary judgment to CMC in both cases. In the Rose case, the trial court also found that the statute of limitations ran prior to the filing of the complaint.

Both Rose and Hoffman moved the court to alter or amend its judgment and in support of the motion submitted a second affidavit from Lewis Mustard ("Mustard"), a self-styled hospital and health care administrator residing in North Carolina but not licensed in Tennessee or any of its contiguous states as a medical practitioner or specialist. The trial court denied the motions to amend. Although other defendants, including McCord, remained in the lawsuit, the trial court's or-

ders of summary judgment to CMC in both cases were made final under Rule 54.02 of the Tennessee Rules of Civil Procedure. Rose and Hoffman appeal the entry of summary judgment in favor of CMC and the denial of the motion to alter or amend the judgment. The two cases were consolidated on appeal.[1]

On appeal, both Rose and Hoffman argue that the trial court abused its discretion in not allowing a waiver of the contiguous state licensing requirement in Tenn.Code Ann. § 29–26–115(b), in striking Kaufman's affidavit, and in denying the motions to alter or amend the judgment, in support of which Mustard's affidavit was filed. In addition, Rose claims that the trial court erred in finding that the statute of limitations had run prior to his filing suit.

■ A trial court should grant a motion for summary judgment when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn.R.Civ.P. 56.03. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn.1993). On a motion for summary judgment, the trial court and the appellate court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* at 210–11. The phrase "genuine issue" as stated in Rule 56.03 refers to genuine, factual issues and does not include issues involving legal conclusions to be drawn from the facts. *Id.* at 211. In *Byrd*, the Court said:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard,

1. Both Rose and Hoffman filed motions before this Court for consideration of post-judgment facts—*the discovery of an expert witness from a* contiguous state after the trial court's issuance of a final judgment. This Court denied the motions on the basis that the existence of this witness

related directly to the merits of the case, that it was the subject of dispute between the parties, and that it was not a fact that occurred after the judgment, despite counsel not having discovered the witness earlier. See Tenn.R.App.P. 14(a).

Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial. "If he does not so respond, summary judgment ... shall be entered against him."

*Id.* (citations omitted). Summary judgment is only appropriate when the case can be decided on the legal issues alone. *Id.* at 210. Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 68 (Tenn.App.1992). Review of the grant of summary judgment is, therefore, *de novo*.

Rose and Hoffman assert on appeal that the trial court erred in striking Kaufman's affidavit, based on Tenn.Code Ann. § 29–26–115(b). This statutes provides:

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred.... The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

Tenn.Code Ann. § 29–26–115(b) (1980). The record is clear that Kaufman is not, nor was he during the year preceding the alleged injury, licensed to practice in Tennessee or one of its contiguous border states. During the period in question, he was only licensed to practice in Maryland and West Virginia.

Rose and Hoffman argue that this requirement should have been waived. Tenn.Code Ann. § 29–26–115(b) provides that this requirement may be waived if the court "determines that the appropriate witnesses otherwise would not be available." Trial courts have broad discretion in determining the competency of experts. *Coyle v. Prieto*, 822 S.W.2d 596, 600 (Tenn.App.1991). The trial court's determination of the qualifications, or lack thereof, of any particular witness may be reversed only upon a finding of abuse of that discretion. *Id.*

In support of their motions for waiver of the locality rule, Rose and Hoffman each filed three affidavits from the same persons. The first was from one of their attorneys, Larry Wilks ("Wilks"). Wilks claimed that he had conducted a diligent search and inquiry for an expert. As support for this statement, he noted that he had spoken with the plaintiffs' other attorney in the case, Sidney W. Gilreath ("Gilreath"), and with an attorney in Philadelphia, who had referred him to Kaufman. He noted that Kaufman had helped him in his search. Wilks expressed the belief that the size of CMC's parent corporation, the Columbia/HCA System ("HCA"), made it difficult to find an expert without a conflict of interest. As an example, he stated that he had talked to an unnamed administrator of a local hospital in Springfield, Tennessee, who could not testify because of his relationship with HCA.

The second affidavit filed by Rose and Hoffman was from Gilreath, their other attorney. Gilreath asserted that he had conducted a diligent, yet unsuccessful, search in Tennessee for an expert in the field of hospital risk management and quality assurance. He claimed to have spoken with various unidentified health care professionals who would talk to him only if their names would not be disclosed or listed as expert witnesses in either case. Gilreath also stated that he had talked to unidentified physicians in Knoxville and Johnson City. Finally, he employed the services of an unnamed professional expert witness finder, who was also unable to find a witness in Tennessee or a contiguous state.

Rose and Hoffman also filed a supplemental affidavit from Kaufman. Kaufman stated that he had made a genuine and diligent effort to find a witness in Tennessee or one of its contiguous states. He supported this claim by stating that he had "considered no less than 4 individuals and [had] spoken with no less than 4 individuals." Kaufman also

expressed the belief that the size of HCA made it difficult to find a witness in Tennessee or a contiguous state.

In response to Rose's and Hoffman's motions, CMC filed three affidavits from the same people in both cases. The first was from William Ives, Vice President of Information Services for the Tennessee Hospital Association. Ives stated that, "[a]s of 1993, there were a total of 159 hospitals operating in Tennessee." The second affidavit was from Wallace Cunningham, Vice President of the Arkansas Hospital Association. Cunningham stated that, "[a]s of 1993, there were a total of 99 hospitals operating in Arkansas, nine (9) of them being psychiatric hospitals." The third affidavit was from Thomas Pasko, a research associate for the American Medical Association in Chicago, Illinois. He stated that, as of January 1993, the following number of licensed physicians were listed within their respective states: 11,613 in Tennessee; 7,672 in Alabama; 4,353 in Arkansas; 13,475 in Georgia; 7,334 in Kentucky; 3,763 in Mississippi; 11,609 in Missouri; 15,036 in North Carolina; and 15,-008 in Virginia.

■ The trial court found that both Rose and Hoffman had "failed to make sufficient showing of non availability [sic] of other experts to allow for the admissibility of the affidavit of Dr. Arthur Kaufman pursuant to T.C.A. § 29–26–115(b)."[2] We find no abuse of discretion in the court's ruling. The affidavits submitted by Rose and Hoffman were generalized and unspecific, and reflect only a cursory effort to find an appropriate expert from Tennessee or a contiguous border state. Wilks describes talking to only one unnamed Tennessee administrator in support of his conclusory assertion that the size of HCA makes it difficult to find an expert. Gilreath's affidavit does not list the number of physicians he talked to, nor does it provide any information regarding the efforts made by his unnamed professional witness finder. Kaufman apparently only talked to four prospective witnesses. From this the trial court correctly concluded that neither Rose nor

Hoffman had established that waiver of the locality rule was warranted or that "appropriate witnesses otherwise would not be available." Tenn.Code Ann. § 29–26–115(b) (1980).

■ Rose and Hoffman argue that HCA is such a large corporation that Maryland is contiguous to its corporate presence, and thus Kaufman meets the requirements of Tenn.Code Ann. § 29–26–115(b). This interpretation is contrary to the plain language of the statute.

The affidavits submitted by CMC in support of its motion for summary judgment in each case established that CMC did not violate the appropriate standard of care. As discussed above, both Rose and Hoffman failed to file an affidavit from a competent witness to create a genuine question of material fact on this issue. Consequently, summary judgment was properly granted.

■ After entry of summary judgment in favor of CMC, both Rose and Hoffman filed a motion with the trial court to alter or amend its judgment. In both cases, Mustard's affidavit was filed in support of the motion to alter or amend. In addition, they filed a second affidavit from Wilks, in which Wilks stated that he had continued his search for a Tennessee witness. This continued search involved contacting three doctors' offices, speaking with two physicians and asking for their assistance in the search, further using Kaufman's assistance, speaking with three other lawyers and enlisting their aid, and contacting an unnamed medical witness service, all to no avail. The trial court denied the motion in both cases.

There is no indication that Mustard was unavailable prior to the entry of summary judgment or that Wilks' further efforts could not have been made prior to the entry of summary judgment. *See Marr v. Montgomery Elevator Co.,* 922 S.W.2d 526, 527–28 (Tenn.App.1995); *Schaefer by Schaefer v. Larsen,* 688 S.W.2d 430, 433 (Tenn.App. 1984). Moreover, the motion to alter or amend in each case related to proffered ex-

---

2. The court also found that Kaufman's affidavit did not establish the necessary foundation required by Tenn.Code Ann. § 29–26–115(a)(1).

pert testimony, the affidavits of Mustard and Kaufman, and waiver of the locality rule. As noted earlier, trial courts have broad discretion in determining the competency of experts. *Coyle v. Prieto,* 822 S.W.2d 596, 600 (Tenn.App.1991). We find no abuse of discretion in the trial court's decision to deny both plaintiffs' motions to alter or amend the entry of summary judgment in favor of CMC. *See Marr,* 922 S.W.2d at 527–28.

In sum, we affirm the trial court's decision in both cases to disallow Kaufman's affidavit based on the locality rule, to decline to permit waiver of the locality rule, to enter summary judgment in favor of CMC, and to deny both plaintiff's motions to alter or amend the judgment. This pretermits the issue raised by Rose of whether the trial court properly ruled that his claims were barred by the statute of limitations.

Accordingly, we affirm the trial court's grant of summary judgment to CMC in both of the cases consolidated in this appeal. Costs are taxed against Appellants, for which execution may issue if necessary.

CRAWFORD, P.J. (W.S.), and FARMER, J., concur.