IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2013 Session

## C.L. GILBERT, JR. v. IZAK FREDERICK WESSELS, M.D.

**Extraordinary Appeal from the Circuit Court for Hamilton County**
**No. 11C201      Jacqueline S. Bolton, Judge**

_____

**No. E2013-00255-COA-R10-CV-FILED-NOVEMBER 18, 2013**

_____

This Court granted an extraordinary appeal in this health care liability action to determine whether the trial court abused its discretion in declining to waive the contiguous state requirement for a testifying expert witness set forth in Tennessee Code Annotated §29-26-115(b).  Discerning no error, we affirm.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court
Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and D. MICHAEL SWINEY, J., joined.

David J. Ward and Alix C. Michel, Chattanooga, Tennessee, for the appellant, Izak Frederick Wessels, M.D.

Marvin B. Berke and Jeremy M. Cothern, Chattanooga, Tennessee, for the appellee, C.L. Gilbert, Jr.

**OPINION**

I.  Factual and Procedural Background

Defendant, Izak Frederick Wessels, M.D., is an ophthalmologist practicing in Hamilton County, Tennessee.  Plaintiff, C.L. Gilbert, Jr., sought treatment from Dr. Wessels for a vitreous floater in his eye, which condition significantly interfered with his vision.  Dr.

Wessels performed YAG laser surgery[1] on Mr. Gilbert to treat the vitreous floater in January 2010.

Mr. Gilbert was dissatisfied with the outcome of the surgery. He filed this health care liability action, alleging that Dr. Wessels failed to comply with the standard of care in a number of ways, including but not limited to (1) method of treatment, (2) number of laser shots used, (3) placement of the lens, and (4) use of an incorrect lens. Mr. Gilbert claimed that his ability to work and enjoy life had been seriously and permanently impaired as a result of Dr. Wessels's negligent treatment.

With reference to the litigation, Dr. Wessels retained an expert, Dr. Scott Geller, who practices in Florida. Dr. Wessels asserted that Dr. Geller was a recognized expert regarding the use of YAG laser surgery for treatment of vitreous floaters. Prior to choosing Dr. Geller, Dr. Wessels's counsel purportedly spent over thirty-five hours attempting to locate a qualified expert in Tennessee or a contiguous bordering state who was willing to testify. According to counsel, the efforts were to no avail. Dr. Wessels thus requested the trial court to waive the geographical requirement for a testifying expert witness set forth in Tennessee Code Annotated §29-26-115(b), pursuant to the language in that subsection providing that the court may waive said requirement "when it determines that the appropriate witnesses otherwise would not be available." The trial court refused to waive the contiguous state requirement so that Dr. Geller could testify and further declined to allow Dr. Wessels to pursue an interlocutory appeal of this issue. This Court granted Dr. Wessels an extraordinary appeal pursuant to Tennessee Rule of Appellate Procedure 10.

## II. Issue Presented

The present appeal raises the issue of whether the trial court abused its discretion in declining to waive the contiguous state requirement for a testifying expert witness set forth in Tennessee Code Annotated §29-26-115(b).

## III. Standard of Review

"In general, questions regarding the admissibility, qualifications, relevancy and competency of expert testimony are left to the discretion of the trial court. The trial court's ruling in this regard may only be overturned if the discretion is arbitrarily exercised or abused." *McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257, 263-64 (Tenn. 1997) (internal citation omitted). Under the abuse of discretion standard, a trial court's ruling "'will be

---

[1] The particular surgery performed on Mr. Gilbert is described as "YAG" laser surgery, but no explanation regarding this type of surgery is provided in the record.

upheld so long as reasonable minds can disagree as to propriety of the decision made,'" or as long as it "falls within a range of acceptable alternatives." *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000)); *Ward v. Glover*, 206 S.W.3d 17, 38 (Tenn. Ct. App. 2006). Our Supreme Court has explained that "a trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006). The abuse of discretion standard does not permit an appellate court to substitute its judgment for that of the trial court. *Id*.

## IV. Contiguous State Requirement

Expert testimony in a health care liability action is governed by Tennessee Code Annotated § 29-26-115. Pursuant to the statute, there are three requirements for an expert witness to be competent to testify in a medical negligence case: the witness must be (1) "licensed to practice in the state or a contiguous bordering state," (2) in "a profession or specialty which would make the person's expert testimony relevant to the issues in the case," and (3) must have "practiced this profession or specialty in one . . . of these states during the year preceding the date that the alleged injury or wrongful act occurred." *Shipley v. Williams*, 350 S.W.3d 527, 550 (Tenn. 2011). The statute provides that the trial court may waive the contiguous state requirement "when it determines that the appropriate witnesses otherwise would not be available." Tenn. Code Ann. § 29-26-115(b). This provision has been referred to as a "'safety valve' for those situations in which a party is unable to locate a qualified expert within this state or one of our bordering states." *Sutphin v. Platt*, 720 S.W.2d 455, 458 (Tenn. 1986).

Dr. Wessels argues that the trial court erred in refusing to allow Dr. Geller to testify, asserting that this is precisely the situation contemplated by the "safety valve" provision found in Tennessee Code Annotated §29-26-115(b). This statute, *inter alia*, addresses the applicable burden of proof and competency requirements of expert witnesses testifying in health care liability actions, providing:

(a) In a health care liability action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;

-3-

(2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and

(3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice **in the state or a contiguous bordering state** a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. **The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.**

(Emphasis added.)

Dr. Wessels contends that the trial court abused its discretion by refusing to allow Dr. Geller to testify when presented with evidence that there was no other qualified expert witness available in Tennessee or a contiguous state. Dr. Wessels asserts that his counsel made a diligent search to obtain an expert witness practicing in Tennessee or a contiguous state but was unable to locate one. In support, Dr. Wessels lists thirteen doctors or groups in Tennessee and contiguous states who were contacted regarding the performance of YAG laser surgery for the treatment of vitreous floaters. According to an affidavit filed, counsel spent approximately thirty-five hours searching for an expert before locating Dr. Geller in Florida.

Dr. Wessels further argues that testimony from a health care professional who has actually performed YAG laser surgery to treat vitreous floaters is necessary to evaluate any questions regarding the applicable standard of care in performance of the procedure. The surgery is described by Dr. Wessels as an "emerging technique." As pointed out by Dr. Wessels, one of Mr. Gilbert's experts, Dr. Alan Kozarsky, conceded in his deposition that the jury should hear from a physician, such as Dr. Geller, who has actually performed this type of procedure. According to Dr. Kozarsky, Dr. Geller was one of three doctors in the country who had the greatest experience in performing this surgery. Dr. Wessels also filed

an affidavit from Dr. Edward Chaum, an ophthalmologist practicing in Memphis, who stated that he was familiar with the use of YAG laser surgery for treating vitreous floaters but that he did not perform the procedure himself. Dr. Chaum indicated that he was not aware of any doctors in Tennessee other than Dr. Wessels who did so. In Dr. Chaum's opinion, testimony regarding whether Dr. Wessels performed the procedure within the standard of care should be provided by a doctor who actually had experience utilizing the technique.

In postulating that the trial court should have waived the contiguous state requirement found in Tennessee Code Annotated §29-26-115(b), Dr. Wessels relies primarily on *Childress v. Bennett*, in which the Tennessee Supreme Court elucidated the proper application of this statutory provision:

> The basic purpose for courts and judges is to afford the citizenry a public forum to air disputes. It is our view that there can be no possible construction of the provision in subsection (b) of § 29-26-115 than to give a trial court the opportunity to utilize its discretion in the interest of equity and justice. . . . The prime function and purpose of the judicial system is to settle, determine and end differences between contending parties. Courts should not act arbitrarily in their judgments, and it is the general rule that courts are reluctant to give effect to rules of procedure which seem harsh and unfair, and which prevent a litigant from having a claim adjudicated upon its merits. T.C.A. § 29-26-115(b) provides that "the court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available." We are of the opinion that this is a proper case for the waiver provision in the statute to apply.

816 S.W.2d 314, 315-16 (Tenn. 1991) (internal citations omitted).

In *Childress*, the Supreme Court reversed the trial court's decision declining to waive the contiguous state requirement. *Id.* *Childress* was quite fact-specific, however, as the expert in question was licensed to practice in Tennessee but had spent the year preceding the date of the alleged injury participating in a residency program in Florida. *Id.* Further, if his testimony were not allowed, the plaintiff would have been left with no proof as to medical causation. *Id.* The Court explained that because the expert was in the process of obtaining advanced training in Florida during the year in question, "[w]e do not consider such an absence from the State, of an otherwise qualified physician, to be a breach of T.C.A. § 29-26-115(b) to the extent that waiver should be denied." *Id.* at 316. The Court also noted that the action had been pending for ten years and that no other expert witness had been located during that time. *Id.* We find that *Childress* is not controlling authority as it is factually distinguishable from the case at bar.

Mr. Gilbert argues that Dr. Wessels did not demonstrate that a qualified expert witness was otherwise unavailable because (1) he failed to make a diligent search and (2) Dr. Wessels's assertion that he needed to locate an expert who had actually performed the YAG laser surgery was contrary to Tennessee law. Further, Mr. Gilbert asserts that, contrary to Dr. Wessels's assertions, the issue of whether Dr. Geller's testimony would meet the admissibility requirements of Tennessee Rules of Evidence 702 and 703 is not reached until he is deemed competent to testify pursuant to Tennessee Code Annotated §29-26-115(b). *See Shipley,* 350 S.W.3d at 550. As Mr. Gilbert posits, the trial court properly excluded Dr. Geller in the case at bar inasmuch as he did not meet the competency requirements of the statute. Mr. Gilbert further asserts that the trial court properly declined to waive those requirements because there was no showing that an appropriate witness otherwise would not be available. We agree.

Mr. Gilbert's counsel filed an affidavit from his legal assistant demonstrating the existence of over 2,300 ophthalmologists practicing in Tennessee and contiguous states. The record reflects that defense counsel only contacted thirteen of these doctors or related medical groups. The trial court, in declining to waive the requirements of Tennessee Code Annotated Section 29-26-115(b), stated, "Dr. Geller is from a noncontiguous state and the Court does not find that appropriate witnesses would otherwise be unavailable." We do not find this ruling to be an abuse of discretion. As previously noted, as long as the trial court's ruling "falls within a range of acceptable alternatives," it will be upheld. *See Ward*, 206 S.W.3d at 37.

This Court has previously affirmed a trial court's refusal to waive the requirements of Tennessee Code Annotated Section 29-26-115(b) under similar circumstances when the affidavits of the plaintiffs' attorneys "reflect[ed] only a cursory effort to find an appropriate expert from Tennessee or a contiguous border state." *See Rose v. H.C.A. Health Servs. of Tennessee, Inc.*, 947 S.W.2d 144, 148 (Tenn. Ct. App. 1996). In *Rose*, the plaintiffs' attorneys claimed to have made a diligent search for an expert in Tennessee or a contiguous state to no avail. *Id.* The respective attorneys' affidavits provided that while one attorney spoke to a hospital administrator, the other attorney talked to physicians (without providing a number) and contacted an expert witness finder as well. *Id.* According to an affidavit from the plaintiffs' proposed expert witness, he had spoken to four other individuals. *Id.*

This Court observed that in response to those affidavits in *Rose*:

CMC filed three affidavits . . . . The first was from William Ives, Vice President of Information Services for the Tennessee Hospital Association. Ives stated that, "[a]s of 1993, there were a total of 159 hospitals operating in Tennessee." The second affidavit was from Wallace Cunningham, Vice

President of the Arkansas Hospital Association. Cunningham stated that, "[a]s of 1993, there were a total of 99 hospitals operating in Arkansas, nine (9) of them being psychiatric hospitals." The third affidavit was from Thomas Pasko, a research associate for the American Medical Association in Chicago, Illinois. He stated that, as of January 1993, the following number of licensed physicians were listed within their respective states: 11,613 in Tennessee; 7,672 in Alabama; 4,353 in Arkansas; 13,475 in Georgia; 7,334 in Kentucky; 3,763 in Mississippi; 11,609 in Missouri; 15,036 in North Carolina; and 15,008 in Virginia.

*Rose*, 947 S.W.2d at 148. This Court affirmed the trial court's ruling that the plaintiffs had "'failed to make sufficient showing of non availability [sic] of other experts to allow for the admissibility of the affidavit of Dr. Arthur Kaufman pursuant to T.C.A. § 29–26–115(b).'" *Id.* (holding that the plaintiffs had failed to establish that "waiver of the locality rule was warranted" or that "appropriate witnesses otherwise would not be available.")

Similarly, in this case, we determine that the efforts of defense counsel reflect "only a cursory effort to find an appropriate expert from Tennessee or a contiguous border state." *See Rose*, 947 S.W.2d at 148. While the evidence demonstrated that there were over 2,300 ophthalmologists in Tennessee and contiguous states, we do not find that contacting thirteen doctors or professional groups constituted a diligent search. We conclude that the trial court did not abuse its discretion in declining to waive the requirements of Tennessee Code Annotated Section 29-26-115(b).

Further, defense counsel unnecessarily limited the search to only those doctors who had actually performed YAG laser surgery to treat vitreous floaters when the statute simply requires a witness be able to "demonstrate sufficient familiarity with the applicable standard of care." *Shipley*, 350 S.W.3d at 538. As Mr. Gilbert correctly notes, Tennessee law does not require that the expert have actual experience in performing the procedure at issue. *Id*. at 556-557. The Supreme Court elucidated in *Shipley*:

Our courts have recognized on a number of occasions that section 29-26-115 "contains no requirement that the witness practice the same specialty as the defendant." *Searle*, 713 S.W.2d at 65 (holding that the witness was competent to testify regarding "the applicable standards of surgeons in the prevention and treatment of surgical wound infections . . . even though he was not himself a surgeon"); *Cardwell v. Bechtol*, 724 S.W.2d 739, 751 (Tenn.1987) (statute does not require witness to practice same specialty as defendant, but "the witness must demonstrate sufficient familiarity with the standard of care and the testimony must be probative of the issue involved"); *Pullum*, 174 S.W.3d

at 142; *Church*, 39 S.W.3d at 166 n. 17; *Ledford*, 742 S.W.2d at 647. Consequently, courts must look carefully at the particular issues presented in the case to determine if an expert practices a profession or specialty that would make the expert's testimony relevant to those issues.

*Id*. Further, the trial court is not compelled to waive the geographical requirement of the statute simply to allow a party to present the testimony of an expert who is allegedly "more qualified" than those found within the state or contiguous states. *See Ward*, 206 S.W.3d at 37.

As this Court explained in *Gaw v. Vanderbilt University*, No. M2011-00306-COA-R3-CV, 2012 WL 1388376 at *5 (Tenn. Ct. App. Apr. 19, 2012):

Trial courts have broad discretion in determining the competency of experts. Appellate courts will not reverse the ruling of a trial judge on the issue of competency of a witness unless it is shown that the trial judge was clearly in error, and the decision was an abuse of discretion. The abuse of discretion standard of review is a less rigorous review of the lower court's decision. It does not permit reviewing courts to second-guess the court below, or to substitute their discretion in place of the lower court's, because the decision being reviewed involved a choice among several acceptable alternatives.

(Internal citations omitted.) The trial court properly determined that Dr. Wessels failed to demonstrate that an appropriate expert witness was otherwise not available. Upon careful review of the record, we conclude that the trial court did not abuse its discretion in declining to waive the contiguous state requirement set forth by statute.

V. Conclusion

The trial court's ruling declining waiver of the requirements of Tennessee Code Annotated Section 29-26-115(b) is affirmed. Costs on appeal are taxed to the appellant, Dr. Wessels. This case is remanded to the trial court, pursuant to applicable law, for further proceedings consistent with this opinion.

_____
THOMAS R. FRIERSON, II, JUDGE